IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REN JUDKINS                         )
                  Plaintiff,        )
                                    )
           v.                       )
                                    ) Civil Action No. 07-0251
HT WINDOW FASHIONS CORP.,           )
                  Defendant.        )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                           June    , 2007

     This is a patent infringement suit.  Plaintiff alleges that

defendant's window covering products infringe his patent in

violation of the Patent Act, 35 U.S.C.A. § 1, et seq.  Plaintiff

seeks injunctive relief, damages, and attorneys fees.  Defendant

has brought counterclaims under the Declaratory Judgement Act

alleging that the asserted patent, and a related patent, are

invalid, unenforceable, and not infringed.  Defendant has also

brought counterclaims alleging unfair competition, interference

with prospective contract, business disparagement, and trade

libel.

     There are two motions before the court.  Plaintiff has moved

to dismiss defendant's declaratory judgment counterclaim as to

the related patent [doc. no. 20].  Plaintiff contends that we

lack subject matter jurisdiction over that action because there

is no case or controversy regarding the related patent.

Defendant has moved for a preliminary injunction [doc. no. 8].
Defendant seeks to enjoin plaintiff from notifying third parties
of his belief that defendant's products infringe his patents.

For the reasons set forth below, both motions will be
denied.


I.      FACTUAL BACKGROUND

The material facts are not in dispute.  Plaintiff, Mr.
Judkins, holds many patents in the window coverings field.  Two
recently issued patents are involved in this case: U.S. Patent
Number 7,159,634 (the '634 Patent) and U.S. Patent Number
7,182,120 (the '120 Patent).  Simply put, these patents cover
tabbed, cellular blinds - those that from the side look like
figure eights or narrow honeycombs stacked on top of each other.
The '634 Patent covers tabbed single cell blinds and the '120
Patent covers tabbed double cell blinds.  Plaintiff does not
manufacture or sell window coverings.  Rather, he is in the
business of licensing his inventions to third parties in exchange
for royalties.

Plaintiff alleges that at least one of defendant's
products infringes his '120 Patent.  In its counterclaims,
defendant seeks a declaratory judgment that both the '120 Patent

2

and the related '634 Patent are invalid, unenforceable, and not infringed.

In addition to the patent counterclaims, defendant has also asserted counterclaims based on plaintiff's distribution of a letter notifying the marketplace of defendant's alleged infringement of his patents.  Defendant contends that plaintiff has engaged in unfair competition, under federal and state law, interference with prospective contract, commercial disparagement, and trade libel, by distributing such letters.  The letter is signed by plaintiff's attorney, and is written on that attorney's letterhead.  The letter refers to both the '634 Patent and the '120 Patent and states the attorney's "opinion" that defendant's "'Polaris' product falls within one or more of [the] allowed claims" of the '120 Patent.  The letter also states the attorney's "opinion that the sale, offer for sale and use of the 'Polaris' tabbed double cell products...will infringe the ['120] Patent."

Another series of letters is also at issue in this case.  In 2005 and 2006, the parties exchanged several letters regarding defendant's alleged infringement of what would become the '634 Patent.  Plaintiff claims that these letters prove that defendant redesigned its allegedly infringing first generation single cell product voluntarily, and not as a result of plaintiff's threats

3

of litigation.  Therefore, according to plaintiff, there is no case or controversy regarding the '634 Patent.

The first of these letters is dated March 31, 2005.  In it, plaintiff accuses defendant of selling tabbed single cell products that infringe the allowed claims of what would ultimately issue as the '634 Patent.  In response, defendant asked for a copy of the allowed claims.  Plaintiff did not provide defendant with a copy of the allowed claims until June of 2006, more than a year after defendant made its request.  In July of 2006 defendant provided plaintiff with samples of its second generation single cell product, explained that it had redesigned, and no longer sold, its first generation product, and denied any allegations of infringement.  Plaintiff responded that the second generation single cell Polaris product did not infringe the '634 Patent, but reiterated his belief that the now discontinued first generation product still did.

About six months after the last letter was sent regarding defendant's Polaris products and alleged infringement of the '634 Patent, the '634 Patent issued.  About one month after the issuance, and about two weeks before this case was filed, our defendant filed a declaratory judgement action in the United States District Court for the Central District of California seeking a determination that the '634 Patent was invalid,

4

unenforceable, and not infringed.  That action was transferred to
this court on the grounds that the California court lacked
personal jurisdiction over Mr. Judkins.  That case, HT Window
Fashions Corp. V. Judkins, Civil Action No. 07-0693, has recently
been consolidated with this case [doc. no. 27].  The declaratory
judgment action filed in California mirrors defendant's
declaratory judgment counterclaims in this case.

     In short, defendant contends that the '120 Patent and the
'634 Patent are invalid and unenforceable because they were
obtained as a result of sham litigation and fraud before the
federal courts and the Patent and Trademark Office.  According to
defendant, plaintiff sued another window coverings company,
Newell Window Furnishings, Inc., for patent infringement in this
court in 2001 in order to overturn a prior determination by the
Board of Patent Appeals and Interferences that plaintiff had
abandoned, suppressed, or concealed the invention disclosed in
U.S. Patent Application Serial Number 08/756,282 (the '282
Application).[1]  Defendant contends that as part of the alleged
scheme, Newell agreed not oppose plaintiff's motion for summary
judgment to overturn the Board's decision in exchange for a
favorable license under any patent that might issue from the '282

---

[1] The '282 Application is a precursor to both the '120
Patent and the '634 Patent.

Application.[2]  In fact, plaintiff's motion for summary judgment
was granted, and the Board's decision that plaintiff had
abandoned, suppressed, or concealed his invention was overturned.
Judkins v. Newell Window Furnishings, Inc., Civil Action No. 01-
2211 [doc. no. 30].

     In addition, defendant contends that plaintiff and Newell
agreed that they would not inform this court of a relevant ruling
made in a related federal case.  That related case was a patent
infringement lawsuit between Newell and another window coverings
company, Springs Window, previously filed in the United States
District Court for the Northern District of Illinois.  In that
case, the court held that Newell's patent[3] was invalid because
Mr. Judkins was the first to invent.  Although the '282
Application was not being asserted in the case, the Illinois
court went on to observe that while the invention disclosed in
the '282 Application enjoyed priority over Newell's patent,
plaintiff had abandoned, suppressed, or concealed it, and
therefore, would not be able to obtain a patent for it.
According to defendant, plaintiff did not inform this court of

_____

     [2] No patent issued from the '282 Application.  However,
both the '634 Patent and the '120 Patent are continuations of the
'282 Application.

     [3] The "Newell Patent" (U.S. Patent Number 5,692,550)
was actually issued to James Ford, and licensed to Newell.

the Illinois court's comments in order to avoid any preclusive
effect that they might have.

## II. APPLICABLE LAW

### A. The Motion to Dismiss

Plaintiff has filed a motion to dismiss defendant's
declaratory judgment counterclaims alleging invalidity,
unenforceability, and non-infringement of the `634 Patent under
Federal Rule of Civil Procedure 12(b)(1). Plaintiff contends
that this court has no subject matter jurisdiction over the
declaratory judgment counterclaims because there is no case or
controversy regarding the `634 Patent. We first set forth the
law applicable to Rule 12(b)(1) motions, and then examine the
jurisdictional requirements under the Declaratory Judgment Act.

### 1. 12(b)(1) Standard

While a Rule 12(b)(6) motion tests the legal sufficiency
of a claim, a Rule 12(b)(1) motion is directed to the court's
"very power to hear the case." Mortensen v. First Federal Sav.
and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). There are two
types of Rule 12(b)(1) motions: those that attack the complaint
on its face, and those that attack subject matter jurisdiction as
a matter of fact. Petruska v. Gannon Univ., 462 F.3d 294, 302

n.3 (3d Cir. 2006).  When considering a facial attack, "the Court

must consider the allegations of the complaint as true," and in

that respect such a Rule 12(b)(1) motion is similar to a Rule

12(b)(6) motion.  <u>Mortensen</u>, 549 F.2d at 891.

> The factual attack ... differs greatly for here the
> trial court may proceed as it never could under
> 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue
> in a factual 12(b)(1) motion is the trial court's
> jurisdiction ... there is substantial authority
> that the trial court is free to weigh the evidence
> and satisfy itself as to the existence of its power
> to hear the case.  In short, no presumptive
> truthfulness attaches to plaintiff's allegations,
> and the existence of disputed material facts will
> not preclude the trial court from evaluating for
> itself the merits of jurisdictional claims.
> Moreover, the plaintiff will have the burden of
> proof that jurisdiction does in fact exist.

<u>Id</u>.

When faced with a factual attack, a district court must

ensure that a Rule 12(b)(1) motion is based on an adequate factual

record.  <u>Gould Electronics Inc. v. United States</u>, 220 F.3d 169, 177

(3d Cir. 2000); <u>Int'l Ass'n of Machinists & Aerospace Workers v. Nw.</u>

<u>Airlines, Inc.</u>, 673 F.2d 700, 711-12 (3d Cir. 1982).  If defendant

contests any of the jurisdictional allegations as pled by plaintiff,

the court must allow the plaintiff to respond with rebuttal evidence

in support of jurisdiction, and the court then decides the

jurisdictional issue by weighing the evidence.  <u>Gould</u>, 220 F.3d at

177.  If there is a dispute of material fact, the court must conduct

a plenary hearing on the contested issues prior to determining jurisdiction. Id. Where none of the material facts are in dispute, a hearing is not required. McCann v. Newman Irrevocable Trust, 458 F.3d 281, 290 (3d Cir. 2006).

District courts "enjoy substantial procedural flexibility in handling Rule 12(b)(1) motions." Berardi v. Swanson Mem'l Lodge No. 48, 920 F.2d 198, 200 (3d Cir. 1990). "A court can evaluate its jurisdiction without an evidentiary hearing 'so long as the court has afforded [the parties] notice and a fair opportunity to be heard.'" Id. (citing Tanzymore v. Bethlehem Steel Corp., 457 F.2d 1320, 1323-1324 (3d Cir. 1972)). A key consideration in determining whether a hearing is required is whether either party has requested one. McCann, 458 F.3d at 290.

## 2. The Declaratory Judgment Act Standard

The Declaratory Judgment Act provides, in relevant part, that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). The "actual controversy" requirement of the Declaratory Judgment Act is rooted in Article III of the Constitution, which provides for federal

9

jurisdiction over only "cases and controversies." Sandisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1378 (Fed. Cir. 2007). Thus, our jurisdiction under the Act extends only to matters that qualify as Article III cases or controversies.

Until very recently, the Court of Appeals for the Federal Circuit applied a two-part test to determine whether an actual controversy existed under the Act. Under that test a plaintiff was required to prove: (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension of imminent suit; and (2) present activity by the declaratory judgment plaintiff which could constitute infringement, or concrete steps taken with the intent to conduct such activity. Teva Pharm. USA, Inc. v. Pfizer, Inc., 395 F.3d 1324, 1332 (Fed. Cir. 2005). However, the Supreme Court recently found that this patent-specific test was not in accord with Supreme Court precedent regarding Article III jurisdiction under the Declaratory Judgement Act.

In MedImmune, Inc. v. Genentech, Inc., the Supreme Court held that a patent licensee was not required to terminate or breach his licensing agreement with a patentee before seeking a declaratory judgment that the underlying patent was invalid, unenforceable, or not infringed. MedImmune, Inc. v. Genentech, Inc., ___ U.S. ___, 127 S.Ct. 764, 772 (2007). In doing so, the Supreme Court explicitly rejected the notion that a declaratory judgment plaintiff destroys

10

subject matter jurisdiction under the Act if he voluntarily ceases, or avoids, the allegedly infringing activity. Id. at 773-74. The court stated that "[t]he dilemma posed...[by] the choice between abandoning his rights or risking prosecution is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" Id. at 773 (quoting Abbott Laboratories v. Gardner,387 U.S. 136, 152 (1967)).

More generally, the Supreme Court reiterated that in patent cases, as in all other cases, the general rules regarding Article III and Declaratory Judgment Act jurisdiction apply. Under those rules, a case or controversy exists where a dispute is "definite and concrete," and "real and substantial" and where "under all the circumstances...there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, _____ U.S. _____, 127 S.Ct. at 771.

Within months of the Supreme Court's decision in MedImmune, the Court of Appeals for the Federal Circuit twice confirmed that the Supreme Court had rejected its two-part Declaratory Judgment Act test. Teva Pharm. USA, Inc. v. Novartis Pharm. Corp., 482 F.3d 1330, 1338-39 (Fed. Cir. 2007); Sandisk, 480 F.3d at 1380 & n.2. The Court of Appeals recognized that it was now obligated to apply the general tests set forth by the Supreme Court in determining whether a

11

patentee, or an accused infringer, could bring a declaratory judgment action. Under those general tests, the Court of Appeals would require a plaintiff to show only "under 'all the circumstances' an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Teva, 482 F.3d at 1338.

In addition to having applied the Supreme Court's MedImmune decision to declaratory judgment patent cases, as a general matter, the Court of Appeals has also already addressed how MedImmune affects the specific jurisdictional issue raised in this case, i.e., whether voluntarily avoiding infringing activity destroys subject matter jurisdiction under the Declaratory Judgment Act. In Sandisk the Court of Appeals for the Federal Circuit stated that a "...party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." Sandisk, 480 F.3d at 1381. The court recognized that "...Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." Id. These very recent statements are in accordance with the long established rule that declaratory judgment jurisdiction still exists even where a party has eliminated the imminent threat of harm

12

simply by not doing what he claims he has the right to do. MedImmune, ___ U.S. ___, 127 S.Ct. at 772 (citing Terrace v. Thompson, 263 U.S. 197 (1923)).

## B. The Motion for a Preliminary Injunction

Defendant has filed a motion for a preliminary injunction seeking to enjoin plaintiff from sending letters to third parties informing them of defendant's alleged infringement of his patents. Defendant claims that it can establish a likelihood of success of proving that the letters constitute unfair competition under section 43(a) of the Lanham Act. We first set forth the general requirements for issuance of a preliminary injunction in this jurisdiction. Then we set forth the law applicable to determining when market notification letters can support an unfair competition claim under the Lanham Act.

### 1. The Preliminary Injunction Standard

A preliminary injunction is an "extraordinary remedy." P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005) (citing Nutrasweet Co. v. Vit-Mar Enterprises, 176 F.3d 151, 153 (3d Cir. 1999)). The test for preliminary relief is a familiar one. A party seeking a preliminary injunction must show that: (1) it has a likelihood of success on the

13

merits; (2) it will suffer irreparable harm if the injunction is denied; (3) granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief. Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006).

### 2. Patent Infringement Notification Standard

A patent holder has the right to enforce its patent, including by threatening potential infringers with suit. Concrete Unlimited Inc. v. Cementcraft, Inc., 776 F.2d 1537, 1538 (Fed. Cir. 1985). Provided the statements are made in good faith, they are not actionable. Fieldturf Int'l, Inc. v. Sprinturf, Inc., 433 F.3d 1366, 1372-73 (Fed. Cir. 2006); Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381-82 & n.2 (Fed. Cir. 2005); Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 897 (Fed. Cir. 1998); Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 709 (Fed. Cir. 1992).

Before a patentee may be held liable under section 43(a) of the Lanham Act for unfair competition based on communications to the marketplace regarding potential infringement, there must be proof that the communication was undertaken in bad faith. Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999). This bad faith requirement is in addition to the elements

14

that must be established in any other case under section 43(a). Id.
Because there is a presumption that an assertion of infringement of a
duly granted patent is made in good faith, a plaintiff must present
affirmative, and clear and convincing, evidence that the patentee
acted in bad faith. Springs Window Fashions LP v. Novo Indus., L.P.,
323 F.3d 989, 999 (Fed. Cir. 2003); Golan v. Pingel Enter., Inc., 310
F.3d 1360, 1371 (Fed. Cir. 2002); C.R. Bard, Inc. v. M3 Sys., Inc.,
157 F.3d 1340, 1369 (Fed. Cir. 1998).

        Exactly what constitutes bad faith is determined on a case by
case basis.  "In general, a threshold showing of incorrectness or
falsity, or disregard for either, is required in order to find bad
faith in the communication of information about the existence or
pendency of patent rights."  Mikohn, 165 F.3d at 897.  Where a
patentee knows that a patent is invalid, unenforceable, or not
infringed, yet represents the contrary to the marketplace, bad faith
can be inferred.  Zenith, 182 F.3d at 1354.  Where a patentee's
position is objectively baseless, or where a patentee has no
subjective reasonable belief in his position, bad faith can be
inferred.  Globetrotter Software, Inc. v. Elan Computer Group, Inc.,
362 F.3d 1367, 1375, 1377 (Fed. Cir. 2004).  A competitive purpose is
not of itself improper.  Mikohn, 165 F.3d at 897.  Nor is bad faith
established if the patentee's position is objectively accurate, even

if the infringement or validity position is later proven to be wrong.
Id.

III.  DISCUSSION

      A.  The Motion to Dismiss

      Plaintiff has moved to dismiss defendant's declaratory
counterclaims, to the extent they involve the '634 Patent, on the
ground that there is no case or controversy regarding that patent.[4]
According to plaintiff, there is no case or controversy because
defendant never stated that it changed from its first generation to
its second generation single cell Polaris product as a direct result
of plaintiff's threats of litigation.  Plaintiff argues that any
declaratory judgment action regarding the '634 Patent would amount to
no more than an advisory opinion, based on a set of hypothetical
facts.

      Defendant alleges in its counterclaims that it changed its
design because of plaintiff's threats of litigation.  Defendant also
alleges that it still wishes to sell the first generation product,
but cannot due to the threat of litigation from plaintiff.  Defendant

_____

      [4] Defendant has brought declaratory judgment
counterclaims challenging the validity and enforceability of both
the '120 Patent and the '634 Patent.  The '120 Patent is the
basis of plaintiff's infringement lawsuit, and plaintiff does not
challenge the jurisdiction of this court over the declaratory
judgment involving that patent.

16

has also provided an affidavit attesting to those facts. Plaintiff contends that these facts are not true. According to plaintiff, the correspondence exchanged between the parties in 2005 and 2006 proves that defendant's allegations are not true.

Therefore, this is a factual attack, not a facial attack, under Rule 12(b)(1). In this situation, we must weigh the evidence in order to satisfy ourselves that we have jurisdiction over this matter. Mortensen, 549 F.2d at 891. A hearing is not required in this case, because none of the material facts are in dispute, because the parties have been afforded notice and a fair opportunity to be heard, and because no party has requested a hearing. McCann, 458 F.3d at 290; Berardi, 920 F.2d at 200.

Plaintiff contends that we have no subject matter jurisdiction over the declaratory judgment counterclaims, to the extent that they involve the '634 Patent, because defendant never told plaintiff that it changed its first generation single cell Polaris product design as a result of plaintiff's threats of litigation. According to plaintiff, this omission prevents defendant from taking the position in this case that it did change its design as a result of those threats. Plaintiff offers the string of correspondence between the parties regarding defendant's alleged infringement of what would issue as the '634 Patent in support of his

17

position.  However, plaintiff's position is flawed, both as a matter
of fact, and a matter of law.

        First, as a matter of fact, the letters do not prove that
defendant's allegation, in this case, that it changed the design of
its first generation single cell Polaris product as a result of
plaintiff's threats of litigation is false.  Rather, the letters
offer no explanation as to why the design was changed, and only
indicate that, as of July of 2006 (over a year after plaintiff made
his original threat), the design had been changed "some time ago."
Plaintiff claims that this reference to the design having been
changed "some time ago," combined with the failure to give any
specific reason for the change in the July 2006 letters, prove that
the design was changed "presumably to improve the product."  There is
no evidence that the first generation design was changed in order to
"improve the product."  Plaintiff's presumption that this was the
reason for the design change is not evidence of that fact.

        Likewise, plaintiff's theory that the omission of a reason
for the design change equates to an affirmative statement that the
design was not changed as a result of the threats of litigation
amounts to no more than supposition on plaintiff's part.  That
omission can equate to a tactical decision, or to a human desire to
deny a competitor the satisfaction of knowing that it was forced into
action.  The omission could represent a determination that the reason

                                18

for the change was really none of its competitor's business, or was irrelevant to resolving the current dispute.  The July 2006 letters, which refer to the first generation design having been changed "some time ago" for an unspecified reason, do not prove what plaintiff contends that they prove.  Plaintiff relies on no other evidence to support his challenge to the truth of defendant's allegations that it changed its design because of plaintiff's threats and wishes to reintroduce the first generation product.[5]  As such, plaintiff's challenge to our subject matter jurisdiction under the Declaratory Judgment Act fails on the facts.

       In addition, plaintiff's challenge is also defective as a matter of law.  Plaintiff contends that any decision regarding the '634 Patent would be based on hypothetical facts because defendant does not now sell the first generation single cell Polaris product. Following plaintiff's argument to its logical conclusion, defendant could only challenge the validity and enforceability of the '634 Patent by manufacturing the first generation product, thereby making

---

       [5] Although, given the fact that plaintiff has no evidence to support his position, defendant need not present any counter-evidence on this issue, defendant has supplied an affidavit attesting to the fact that it changed the Polaris product design as a result of plaintiff's threats.  Plaintiff does not challenge, or counter, this evidence, other than to claim that matters outside of the pleadings cannot be considered in ruling on a motion to dismiss.  However, that general rule does not apply to a Rule 12(b)(1) factual challenge to this court's jurisdiction. Gould, 220 F.3d at 177.

19

itself an infringer.  However, both the Supreme Court, and the Court
of Appeals for the Federal Circuit, have very recently reaffirmed
that a potential infringer need not force itself into the position of
becoming an infringer before bringing an action under the Declaratory
Judgement Act.  MedImmune, ___ U.S. ___, 127 S.Ct. at 777; Sandisk,
480 F.3d at 1381.

Plaintiff would distinguish these recent cases, and the long
line of precedent on which they are grounded, on the sole basis that
defendant never informed him that it changed its product as a result
of plaintiff's patent.  Plaintiff's argument is without legal
consequence.  There is no requirement in the law that a potential
infringer personally, explicitly, and unequivocally inform a patent
holder that it has decided not to take a potentially infringing
action as a direct result of the patentee's patent rights before
bringing a claim under the Declaratory Judgment Act.  Plaintiff has,
unsurprisingly, cited no law to the contrary.

A declaratory judgment plaintiff need only show "under 'all
the circumstances' an actual or imminent injury caused by the
defendant that can be redressed by judicial relief and that is of
'sufficient immediacy and reality to warrant the issuance of a
declaratory judgment.'"  Teva, 482 F.3d at 1338.  Our defendant has
met these requirements, and we are satisfied that there is a legal,
and factual, basis for our jurisdiction.  Plaintiff has caused an

20

actual and imminent injury to defendant. He has caused defendant to change its products, and has placed defendant into the position of either forgoing production of a product or being sued for patent infringement. The injury is immediate and real. When defendant notified plaintiff that it no longer sold its first generation single cell Polaris product, plaintiff responded, in July of 2006, with the following statement: "...should your client resume selling the first generation tabbed single cell product....they will be willfully infringing the claims of the that [sic] patent." That plaintiff now claims there is no case or controversy regarding the '634 Patent is disingenuous. Moreover, the injury can be redressed by judicial relief. A ruling from this court that the '634 Patent is invalid, unenforceable, or not infringed, would remove the threat of litigation based on defendant's first generation single cell Polaris product, which threat plaintiff himself reiterated in his final letter to defendant regarding possible infringement of his '634 Patent.

B.   The Motion for a Preliminary Injunction

Defendant has moved for a preliminary injunction to restrain plaintiff from communicating with any persons involved in the window coverings industry regarding defendant's alleged infringement of the '120 Patent.[6]   Defendant's motion relies solely on an alleged likelihood of success on the merits of its Lanham Act unfair competition claim.   In order to succeed on this section 43(a) claim defendant must prove, by clear and convincing evidence, that plaintiff acted in bad faith in notifying the marketplace of possible infringement of the '120 Patent.   Springs Window, 323 F.3d at 999; Golan, 310 F.3d at 1371; C.R. Bard, 157 F.3d at 1369.   Although defendant does not recognize or apply the appropriate legal standard or burden of proof in its papers, we can extrapolate that defendant believes that two things demonstrate bad faith in this case: First, that the notification letters were sent to customers, and potential customers; and second, that plaintiff knows that the '120 Patent is unenforceable and/or invalid due to his fraudulent conduct before this court, another federal court, and the Board of Patent Appeals

_____

[6] The parties have incorporated their papers filed in the California case in which our defendant, as plaintiff there, sought the same preliminary injunction.   Those papers refer to the 09/703,372 Application, because the '120 Patent had not yet issued.   The '372 Application has now issued as the '120 Patent. Therefore, the motion for preliminary injunction now seeks to enjoin market notification regarding the '120 Patent, rather than the '372 Application.

and Interferences.  Defendant has not established that it will be able to sufficiently prove bad faith, such that we can find a likelihood of success on the merits of its Lanham Act claim.  For that reason, the motion for a preliminary injunction is denied.

The fact that the letters were sent to customers, and potential customers, does not establish bad faith.  Defendant has provided no affirmative evidence that the letters were, in fact, sent in bad faith.  Rather, defendant appears to argue that this motive must be inferred because the letters were sent to customers, rather than distributors or manufacturers.  This is incorrect, as a matter of law.  A patentee has the right to publicize its patent to the marketplace.  Concrete Unlimited, 776 F.2d at 1538.  This right includes the right to notify all infringers of possible infringement. Id.  Users of an infringing product are infringers.  35 U.S.C.A. § 271(a).  Although it may be true that customers are rarely sued for infringement due to business considerations and indemnity provisions, users of infringing products are nonetheless infringers, and therefore, plaintiff is within his rights to inform them of possible infringement of his patent.

Furthermore, the Court of Appeals for the Federal Circuit has specifically recognized a patentee's right to send patent notification letters to customers.  Fieldturf, 433 F.3d at 1369 (letter sent to potential customer of both parties); Zenith, 182 F.3d

23

at 1345-46 (letters sent to potential customers); <u>Mikohn</u>, 165 F.3d at
894, 897 (letters sent to customers and potential customers).
Moreover, according to the Court of Appeals for the Federal Circuit,
even if we could infer a purely competitive purpose from the fact
that plaintiff sent the letters to customers, a competitive purpose
is not of itself proof of bad faith. <u>Mikohn</u>, 165 F.3d at 897.
Therefore, defendant has not established bad faith on the ground that
the letters were sent to defendant's customers, or potential
customers, instead of to manufacturers and distributors.

Nor has defendant shown that it will be able to sufficiently
prove that plaintiff acted in bad faith because he knew that the '120
Patent was invalid and unenforceable. The '120 Patent issued on
February 27, 2007. The Patent was issued with a presumption of
validity. 35 U.S.C.A. § 282. The only evidence that defendant has
presented to overcome that presumption and prove bad faith, both of
which require clear and convincing evidence, is its recitation of the
history of litigation regarding the '282 Application, and a statement
of its belief that the '120 Patent is nothing more than a spawn of
plaintiff's abuse of the patent system. This is insufficient to
prove bad faith.

Defendant has provided no evidence regarding plaintiff's
subjective belief as to the validity or unenforceability of the '120
Patent. Defendant has made no threshold showing of falsity or

24

incorrectness, or disregard of the same.  Based on our evaluation of
the evidence, we cannot say that plaintiff's belief that the '120
Patent was, or would be,[7] valid and enforceable was objectively
unreasonable.

        The allowed claims of the '120 Patent were examined by the
Patent and Trademark Office for more than six years.  Once the patent
issued, it would enjoy a presumption of validity.  There were no
controlling adverse decisions regarding the validity of the '120
Patent.  This court had found that plaintiff had not abandoned,
suppressed, or concealed the invention of a predecessor application.
As a result, the Board decision finding that the invention had been
abandoned, suppressed, or concealed, had been overturned.

        Although the Illinois court stated that plaintiff had
abandoned, suppressed, or concealed the invention of the '282
Application, the effect of those statements on the validity of the
'120 Patent can be reasonably questioned.  As an initial matter,
plaintiff was not a party to that lawsuit.  His patent application
was not the subject of that litigation.  In addition, the Illinois
court's statements addressed a third party's failure to overcome an
evidentiary presumption.  A review of the history of the Illinois
case demonstrates these factors.  The defendant in the Illinois case,

_____

        [7] At the time plaintiff sent the notification letters,
the '120 Patent had not yet issued.  However, the claims had been
allowed and the patent would be issued in due course.

Spring Window Fashions, attempted to invalidate the Newell patent it was accused of infringing on the ground that the invention of the Newell patent was anticipated by Mr. Judkins's invention, as disclosed in the '282 Application. The Illinois court found that because Spring Window Fashions had failed to present evidence to justify Mr. Judkins's 49 month delay in filing a patent application, Spring Window had not overcome the inference that Mr. Judkins intended to abandon, suppress, or conceal his invention. As a result, Spring Window could not rely on Judkins's application as an anticipatory reference to invalidate the patent being asserted against it.

While this is an unfavorable decision to plaintiff, there are also favorable decisions from this court, and the Board of Patent Appeals and Interference on the same issue of abandonment. The status of the '120 Patent is open to reasonable debate at this point. As such, we cannot conclude on this record that plaintiff was objectively unreasonable in notifying the marketplace of alleged infringement of the '120 Patent. Bad faith is not established even if the patentee's position is later proven to be wrong. Mikohn, 165 F.3d at 897.

Moreover, the record also shows that plaintiff's counsel sent the notification letters. Hence, we can assume that plaintiff was acting on the advice of counsel. Defendant has provided no reason

for us to believe that it was unreasonable for plaintiff to rely on
his counsel's apparent advice that the '120 Patent was, or would be,
valid, enforceable, and infringed.

The only other evidence of bad faith is defendant's belief
that plaintiff had sinister motives during prior proceedings.   Just
as plaintiff's presumptions as to why defendant changed its Polaris
design cannot be the basis of a successful challenge to our
jurisdiction, so too are defendant's suspicions of bad faith
insufficient to justify the extraordinary relief of a preliminary
injunction.   Because defendant cannot satisfy the first requirement
for obtaining preliminary injunctive relief, a likelihood of success
on the merits, the motion is denied.

Although not necessary to our ruling, we note also that the
irreparable harm balance does not weigh in defendant's favor.
Defendant claims that plaintiff would suffer no harm were the
injunction to issue because he sells no products and has no
customers, but that it would suffer irreparable harm in the absence
of an injunction because it is losing customers.   The fact that
plaintiff does not sell products does not mean that he would suffer
no harm were the requested injunction to issue.   Plaintiff is a
patent owner.   He makes money from the licensing of his inventions.
He is entitled to receive the maximum amount of royalties in return
for the licensing his invention, without infringers being present in

the marketplace.  To ensure that result, he has the right to
publicize his patent in order to prevent others from making, using,
or selling his inventions without permission.  We further note that
the requested injunction would prevent plaintiff from communicating
with all third parties, including manufacturers and distributors, not
just customers, regarding defendant's alleged infringement.  In
comparison, we do not find defendant's harm to be particularly
irreparable.  Defendant itself admits that its harm in the absence of
an injunction is lost business.  This harm is compensable through
monetary relief.  Therefore, even were defendant able to prove a
likelihood of success on the merits, we would find that the
irreparable harm balance tips in favor of plaintiff, not defendant,
and would deny the motion on that alternative ground.

IV.    CONCLUSION

        For the foregoing reasons, plaintiff's motion to dismiss the
declaratory judgment counterclaims is denied.  We have subject matter
jurisdiction over defendant's declaratory judgment action challenging
the '634 Patent.  In addition, defendant's motion for a preliminary
injunction is denied because defendant has not established a
likelihood of success in proving that plaintiff sent the notification
letters in bad faith.  As an alternative, we would deny the motion
because the balance of harms tips in favor of plaintiff.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REN JUDKINS                          )
                  Plaintiff,         )
                                     )
        v.                           )
                                     ) Civil Action No. 07-0251
HT WINDOW FASHIONS CORP.,            )
                  Defendant.         )

ORDER

AND NOW, this ___ day of _____, 2007, IT IS HEREBY ORDERED

that plaintiff's motion to dismiss [doc. no. 20] is DENIED.  IT IS

FURTHER ORDERED that defendant's motion for a preliminary injunction

[doc. no. 8] is DENIED.

BY THE COURT:

_____, J.

cc:     All Counsel of Record