IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REN JUDKINS,       )
            )
    Plaintiff,    )
            )
    v.       )Civil Action No. 07-0251
            )
HT WINDOW FASHIONS CORP.,   )
            )
    Defendant.    )

MEMORANDUM and ORDER

Gary L. Lancaster,       January 31, 2008
District Judge

  This is an action in patent infringement. Plaintiff, Ren Judkins, alleges that defendant, HT Window Fashions Corp., has infringed one of his cellular window blind patents. HT denies these allegations, and also seeks a declaratory judgment of non-infringement as to another of Judkins' window blind patents. Below we set forth our claim construction rulings as to both patents pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995) (<u>en banc</u>), <u>aff'd</u>, 517 U.S. 370 (1996).

I. FACTUAL BACKGROUND

  The technology in this case relates to tabbed, cellular window blinds. These blinds, when viewed from the side, look like stacked honeycombs. Judkins, an individual inventor, owns various patents in this field. HT, a window blind manufacturer, produces various types of window blinds, including its Polaris

Light Filtering brand. Judkins accuses HT of infringing claims 1 through 7 of United States Patent No. 7,182,120 (the '120 Patent) by manufacturing the Polaris Double Cell Light Filtering cellular shade. HT seeks a declaratory judgment of non-infringement of United States Patent No. 7,159,634 (the '634 Patent) for a version of its Polaris Single Cell Light Filtering cellular shade.

The Patents-in-Suit are related to Patent Application No. 08/756,282. The '120 Patent is a continuation of the '282 Application, meaning that the specifications of the two patents are identical. The '634 Patent is a continuation-in-part of the '282 Application, meaning that the inventor has added something new to the later application. Here, the '634 Patent added disclosures of a headrail, bottomrail, and lift cords that were not in the earlier patent application. Further details regarding the prosecution history of the two Patents-in-Suit are central to the court's claim construction analysis, and will be discussed in context, where appropriate.

The court held a claim construction hearing on October 26, 2007. Counsel for both parties appeared, presented argument and evidence, and answered questions from the court. The court is prepared to issue its claim construction. Patent claim

construction is a matter of law for the court. <u>Markman</u>, 52 F.3d at 979.

## II.    LEGAL BACKGROUND

According to the Court of Appeals for the Federal Circuit, "[i]t is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1312 (Fed. Cir. 2005)(<u>en banc</u>) (quoting <u>Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Therefore, we must begin our claim construction analysis with the words of the claim. <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The words of the claim are generally given their ordinary and customary meaning unless the patentee gave a novel meaning to the term, or expressly relinquished claim scope during prosecution. <u>Teleflex, Inc. v. Ficosa N. Am. Corp.</u>, 299 F.3d 1313, 1325-26 (Fed. Cir. 2002); <u>Vitronics</u>, 90 F.3d at 1582. The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." <u>Merck & Co., Inc. v. Teva Pharm. USA, Inc.</u>, 395 F.3d 1364, 1370 (Fed.

Cir. 2005); Phillips, 415 F.3d at 1313. The person of ordinary skill in the art views the claim term in light of the entire intrinsic record. Thus, the claims "must be read in view of the specification", of which they are a part, and in view of the prosecution history. Markman, 52 F.3d at 979; Phillips, 415 F.3d at 1315; Vitronics, 90 F.3d at 1582.

Claims should be interpreted consistently with the specification, which is the single best guide to determining the meaning of a claim term, because the specification provides context for the proper construction of the claims and explains the nature of the patentee's invention. See Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998). A claim cannot be construed to encompass subject matter that is not taught, or enabled, by the specification. Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc., 450 F.3d 1350, 1355 (Fed. Cir. 2006). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." Young Dental Mfg. Co., Inc. v. Q3 Special Products, Inc., 112 F.3d 1137, 1142 (Fed. Cir. 1997).

In addition to the specification, "the prosecution history can often inform the meaning of claim language by demonstrating how the inventor understood the invention and

whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Phillips, 415 F.3d at 1317. The public has a right to rely on statements made by the patentee during prosecution that define the scope of the claims. Ekchian v. Home Depot, Inc., 104 F.3d 1299, 1304 (Fed. Cir. 1997).

Prosecution disclaimer promotes this public notice function of the prosecution history. The Court of Appeals for the Federal Circuit has adopted the doctrine of prosecution disclaimer as a fundamental precept in its claim construction jurisprudence. Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1323-24 (Fed. Cir. 2003) (collecting cases). Under that doctrine, a patentee cannot recapture through claim construction that which he has disclaimed or disavowed during prosecution in order to obtain allowance of his claims. Elbex Video, Ltd. v. Sensormatic Electronics Corp., 508 F.3d 1366, 1371-72 (Fed. Cir. 2007). Instead, the ordinary meaning of the claims is narrowed in accordance with the scope of the surrender made during prosecution. Chimie v. PPG Industries, Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005); Omega Eng'g, 334 F.3d at 1324-25.

Prosecution disclaimer ensures that claims are not construed one way in order to obtain their allowance and in a different way in order to obtain a judgment of infringement.

5

Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570,
1576 (Fed. Cir. 1995). For the doctrine to apply, the
disclaimer must be "both clear and unmistakable" to one of
ordinary skill in the art. Elbex Video, 508 F.3d at 1371-72;
Omega Eng'g, 334 F.3d at 1326. Prosecution disclaimer may arise
from disavowals made during the prosecution of a familial patent
relating to the same subject matter as the claim language at
issue in the patent being construed. Ormco Corp. v. Align
Tech., Inc., 498 F.3d 1307, 1314 (Fed. Cir. 2007); Omega Eng'g,
334 F.3d at 1333.


III.   DISCUSSION

The parties have asked us to construe the following
disputed claim terms and phrases:

   (1)  shade for covering a window
   (2)  front cells each having an outer wall and an inner
        wall
   (3)  front cells
   (4)  inner wall
   (5)  tab/fin
   (6)  upper cell wall
   (7)  lower cell wall
   (8)  cell wall

Claim terms and phrases that require resolution of a common disputed issue will be discussed together below.

A.    <u>Shade for Covering a Window</u>

<u>Phrase</u>: Shade for covering a window.

<u>Construction</u>: Fabric, or other material, that is used alone and not in conjunction with another piece of fabric or material to screen heat or light, or provide privacy.

<u>Reasoning</u>: The central dispute regarding this claim phrase is whether a "shade for covering a window" is what a layman calls a window blind, including the mounting hardware, the pullcords, and any other components that are typically purchased together at the retail level, or is limited to the fabric part of the window blind.  HT asserts that a "shade for covering a window" is the fabric part only.  In contrast, Judkins contends that a "shade for covering a window" includes all structural components.  Judkins argues that his proposed construction is dictated by the ordinary meaning of the phrase and the prosecution history.  However, we are not convinced by Judkins' arguments.

In determining the meaning of claim terms, we first examine the language of the patent itself.  The claims of the '120 Patent include no reference to mounting hardware, or other

7

structural components. The specification of the '120 Patent

includes no reference to mounting hardware, or other structural

components. The specification includes no teachings as to how

the fabric will be affixed to a window: rail assemblies could be

used; tape could be used; nails could be used. These details

are simply not a part of the '120 Patent. Rather, the

specification speaks exclusively to fabric, and methods of

manufacturing such fabric.

We next look to the prosecution history and ask whether it

adds meaning to the disputed claim term, or whether Judkins

expressly relinquished claim scope during prosecution. Merck,

395 F.3d at 1370. Although Judkins did narrow his claims during

prosecution, the amendment he made does not resolve the dispute

before us.

During prosecution, the Patent Examiner rejected claims

that included the phrase "shade member" on the ground that they

were anticipated and obvious. The Examiner found that a prior

invention, called The Rosette, when combined with existing

cellular window blind technology, would render Judkins' "shade

member" claims unpatentable. The Rosette was a decorative piece

of fabric that was used in conjunction with an arched window

blind to fill in the semi-circular gap left in the center when

the arched blind was fully extended. In order to overcome this

8

rejection, Judkins removed the word "member" after shade and added the words "for covering a window", thus claiming a "shade for covering a window", rather than a "shade member". See dictionary.com ("member" defined as a constituent part of any structural or composite whole); Oct. 13, 2006 Amendment, p. 2. The Examiner saw this amendment as "further limiting". Notice of Allowance, p. 2.

The distinction made by Judkins through this amendment was between his invention, which was something used by itself to perform a utilitarian function, such as providing privacy or screening out light or heat, from The Rosette, which was a small piece of fabric that was decorative and used in conjunction with another window covering.    Therefore, Judkins' amendment addressed the size and functionality of his invention.    The amendment did not address the question before us, that is, whether a "shade for covering a window" refers only to the fabric portion of a window covering.

The Court of Appeals for the Federal Circuit's opinion in the Newell case, which is part of the prosecution history of the '120 Patent, and on which Judkins relies here, fails to answer the question before us for the same reason.    Like Judkins' amendment, the Newell opinion distinguishes shade members from shades    for    covering    windows    based    on    their    size    and

9

functionality.   <u>Newell Window Furnishings, Inc. v. Springs Window Fashions Division, Inc.</u>, 00-1079, pp. 8-10 (Fed. Cir. Jul. 2, 2001), Attachment to Oct. 13, 2006 Amendment.   However, the opinion does not address whether a "shade for covering a window" is limited to the fabric part of a window covering.

It is worth noting, however, that the patents at issue in <u>Newell</u> included claims that used the phrase "shade for covering a window" to refer both to the fabric portion of a window covering, as well as to combinations of the fabric with rail assemblies and pullcords.   <u>See</u> U.S. Patent No. 5,692,550, cls. 10, 24; U.S. Patent No. 5,701,940, cls. 12, 25.   Likewise, in the Patents-in-Suit, the same phrase "shade for covering a window" refers both to the fabric portion of a window covering, as well as to combinations of the fabric with rail assemblies and pullcords.   <u>Compare</u>, '120 Patent, cl. 1 to '634 Patent, cl. 1.   This is strong evidence that the phrase "shade for covering a window", when used in this industry, can mean either the fabric itself or the entire window covering, depending on the context.

Along those lines, the independent claim of the '120 Patent uses the signal "comprising", which means including, but not limited to.   The signal signifies that the claims do not exclude the presence in the accused device or method of elements in

addition to those explicitly recited. See '120 Patent, cl. 1 ("A...shade for covering a window...comprising....a series of front cells;...a series of back cells"); Vivid Technologies, Inc. v. Am. Science & Eng'g, Inc., 200 F.3d 795, 811 (Fed. Cir. 1999). Use of this signal further reflects how those of ordinary skill in the art use the phrase "a shade for covering a window."

Thus, in the context of the '120 Patent, the phrase "shade for covering a window" means "Fabric, or other material, that is used alone and not in conjunction with another piece of fabric or material to screen heat or light, or provide privacy." This construction accounts for Judkins' narrowing amendment, does not read on The Rosette, does not include components that are not called for by the patent claims, or taught in the specification, and is in accordance with how the phrase is used in the industry.

## B.    Front Cells Each Having an Outer Wall and an Inner Wall/Front Cells/Inner Wall

Phrase: [a series of] front cells each cell having an outer wall and an inner wall[, the outer wall folded back to form a pleat]

Phrase: Front Cells

Phrase: Inner Wall

11

Construction - <u>Front Cells</u> are enclosed structures, from an end view, that are adjacent to the front surface of the shade and consist of an <u>Outer Wall</u> which faces toward the front of the shade and an <u>Inner Wall</u> which faces toward the back of the shade. The <u>Outer Wall</u> is formed from a single sheet of material folded back on itself to form a pleat. The <u>Inner Wall</u> is formed when this same single sheet of material is drawn toward the back of the shade in order to form a tab opposite the pleat.

<u>Reasoning</u>: The common dispute between the parties regarding all of these claim terms is whether all walls of the front cells must be formed from a single sheet of fabric. There is no real dispute as to where the front cells are located, or which wall is the outer one and which wall is the inner one.

HT argues that Judkins imposed the single sheet of fabric limitation on himself during prosecution of the '120 Patent in order to overcome the Examiner's rejection, and must be held to it now. Judkins argues that HT's proposed construction improperly imports limitations from the specification into the claims, and limits the claims to the preferred embodiment. Upon examination of the patent itself and the prosecution history, we conclude that the single sheet of folded material limitation must be included in our construction of these claim terms.

12

In determining the meaning of claim terms, we first examine the language of the patent itself. We find that the "single sheet of material" limitation is in accordance with the language of the patent.

Judkins argues that the claims foreclose HT's proposed construction. He cites to claims 4, 5, and 6 of the '120 Patent to support his position. Those claims include "two strips of shade material" and "separate pieces of fabric" as claim elements. '120 Patent, cls. 4, 5, and 6. According to Judkins, a "single sheet of material" limitation would conflict with such claim elements. We disagree. Although the claims define the invention, we still must read them in light of the specification, of which they are a part. Phillips, 415 F.3d at 1312; Renishaw, 158 F.3d at 1250. We cannot construe a claim to encompass subject matter that is not taught or enabled by the specification. Inpro II, 450 F.3d at 1355.

Applying these principles, we find that the "two strips of shade material" and "separate pieces of fabric" claim elements do not conflict with the "single sheet of material" limitation. Rather, these claim elements are directed to when the stack is cut in comparison to when it is bonded (cl. 4), and the precise method used to bond the pieces (cls. 5 and 6). For instance, if a stack of fabric were cut before bonding, the manufacturer

would have two strips of loose material that would need to be bonded together to form a tab. See cl. 4. Claim 5 adds the claim element of "an adhesive" and claim 6 lists three bonding options. Therefore, these claim elements do not foreclose the "single sheet of material" limitation, as Judkins contends.

Nor does the specification. On the contrary, the specification supports a construction that includes the "single sheet of material" limitation. In simplest terms, the specification of the '120 Patent describes a method of making a pleated shade by folding a single piece of fabric back upon itself multiple times to create a stack of fabric, which stack is then bonded and cut to form honeycomb structures. There is no teaching in the specification directed to using more than one piece of fabric to create any part of the cells. In fact, there is no written description of the front cell structure at all. Rather, the only disclosure of this structure is in figure 5 of the '120 Patent, which teaches the single sheet of fabric folded back on itself method of creating the cells. The specification does not enable a reading of claims 4, 5, and 6 that calls for different pieces of fabric to be used in forming the cellular structure, as Judkins now contends.

The prosecution history is accordance with the patent's claims and specification. During prosecution, Judkins added the

14

phrase "folded back to form a pleat" to his claims via amendment in order to overcome the Examiner's rejection. In explaining to the Examiner why he added that limitation, Judkins made several key admissions:

- "Each cell [in the prior art] is made of two sheets of material laid horizontally on top of one another and glued together at their ends to form tabs. There is no teaching that the cells be made by folding the outer wall to form a pleat on one face and a tab on the opposite face." Oct. 13, 2006 Amendment, p. 5.

- "The issue is whether one skilled in the art would be motivated to modify the [prior art], which has cells formed of two sheets with tabs on both ends, to create a shade having cells made from one sheet of material folded back to form a pleat and attached together to form a tab. Applicant submits that the answer is 'No'" Id. at p. 6.

- "There is no teaching or suggestion in [the prior art] to make the cells of a single sheet folded back and having its free ends attached to form a tab." Id. at p. 12.

In this Amendment, Judkins described his invention in clear and consistent language. He explained that his claims should be

15

allowed because he did something that no one else had done - he folded one piece of material to make a pleat at one end and a tab at the other end by attaching the free ends of that same sheet of material to each other. The statements in this 2006 Amendment are also consistent with what Judkins told the Patent Office during prosecution of the '120 Patent's parent application.[1] In a declaration filed in 1998, Judkins stated that "[e]ach cell of this honeycomb would be made of strips of material folded lengthwise to form an upper cell wall and a lower cell wall. Then, the free edges would be connected together by adhesive or by welding to form a tab or fin." Jan. 20, 1998 Declaration, App. No. 08/756,282.

Judkins' only response to this overwhelming evidence of prosecution disclaimer is that he "never argued that the front cells of his invention were formed from a single sheet of material." While it may be true that Judkins never used those exact words in a submission to the Patent Office, they are a necessary consequence of what he did argue. From what Judkins did argue we know that: (1) the front outer wall must be formed

---

[1] Prosecution disclaimer may arise from disavowals made during the prosecution of a familial patent relating to the same subject matter as the claim language at issue in the patent being construed. Ormco, 498 F.3d at 1314; Omega Eng'g, 334 F.3d at 1333. We note that we have given no consideration to statements made during prosecution of the parent patent application after this case was filed.

16

by folding a single sheet of material to make a pleat; and (2) a tab must be formed by attaching the free ends of that same single piece of fabric together on the opposite face. The only way to make both of these statements true is to use a single sheet of fabric to make the front cells. If a different sheet of fabric is inserted somewhere into the structure, then the loose ends of the same fabric that formed the pleat at the front will not also be used to form the tab on the back.

Judkins must be held to all of his representations under the doctrine of prosecution disclaimer, which ensures that claims are not construed one way in order to obtain allowance and in a different way in order to obtain a judgment of infringement. Southwall, 54 F.3d at 1576. In order to apply, Judkins' statements must be "both clear and unmistakable" to one of ordinary skill in the art. Elbex Video, 508 F.3d at 1371-72 (collecting cases); Omega Eng'g, 334 F.3d at 1326. The above statements qualify as both clear and unmistakable. In order to obtain allowance, Judkins represented to the Examiner, and the public, that his invention was different than existing technology for the sole reason that he was using one piece of fabric folded back on itself, with a pleat at one end and a tab on the other, to form the multiple cells. Therefore, Judkins

cannot now reclaim in claim construction that which he abandoned during prosecution.

As such, both the language of the patent and the prosecution history support the constructions entered by the court.

C.    Tab or Fin

Term: Tab

Term: Fin

Construction: A projection formed when the free ends of a single sheet of folded material are bonded together.

Reasoning: Although the term "tab" is used in the '120 Patent, while the term "fin" is used in the '634 Patent, both parties agree that the two terms should be given the same construction.[2] Both parties also agree that a tab is a projection. The dispute between the parties is whether the tab must be formed by bonding together the free ends of a single sheet of folded material. Judkins contends that adding such a limitation limits his claims to a preferred embodiment, and disregards both the ordinary meaning of the word and the language of the patents. HT alleges that the construction is appropriate in light of arguments that Judkins made during prosecution.

_____

[2]    Throughout this discussion we will use the term tab.

18

In determining the meaning of claim terms, we first examine the language of the patents themselves. In all respects relevant to construing the term tab, the specifications of the '634 Patent and the '120 Patent are identical. The Patents-in-Suit do not include specific instructions as to how to form the tab. Rather, the tab is described as a consequence of the method of manufacture. '120 Patent, col. 3, lns. 33-36; col. 4, lns. 3-5. The only specific details regarding the tab's structure come from the '120 Patent's reference to a predecessor patent, U.S. Patent No. 4,974,656. That patent describes tabs being formed either when a piece of material is folded, and bonded together at the fold, or when two free ends of material are bonded together. This indicates that the '120 Patent is referring to the latter type of tab when it claims bonding "two strips of shade material" or "separate pieces of fabric", as distinguished from the first type of "folded tab". However, that distinction does not necessarily resolve the current dispute regarding the single sheet of material limitation.

Although the language of the Patents-in-Suit may not resolve that dispute, we again find that the doctrine of prosecution disclaimer does. During prosecution of the '120 Patent, Judkins told the Patent Office that his invention was unique because his tab was formed when the free ends of the same

19

single sheet of material that had been folded at the front were
joined at the back.   To reiterate, Judkins explained his
invention to the Patent Office as "cells...made by folding the
outer wall to form a pleat on one face and a tab on the opposite
face", and "a shade having cells made from one sheet of material
folded back to form a pleat and attached together to form a
tab", and "cells of a single sheet folded back and having its
free ends attached to form a tab" and "[e]ach cell...made of
strips of material folded lengthwise to form an upper cell wall
and a lower cell wall.  Then, the free edges would be connected
together by adhesive or by welding to form a tab or fin."  These
statements answer the question before us, that is, must the tab
be formed by bonding together the free ends of a single sheet of
folded material?   According to Judkins himself, the answer is
yes.

        We have discussed the doctrine of prosecution disclaimer
above at length, and find that it applies here as well.  Judkins
placed limits on the Patents-in-Suit during their prosecution by
specifically describing how the tab is formed.  His statements
were clear and unmistakable to those of ordinary skill in the
art.  Judkins told the Patent Office, and the public, that his
invention was patentable for the sole reason that he used a
single sheet of folded material to form both a pleat on one

side, and a tab on the other. We hold him to those statements during the claim construction phase of this case.

## D.    Upper Cell Wall/Lower Cell Wall/Cell Wall

Phrase and Construction: Upper and Lower Cell Walls - The upper and lower portion, respectively, of an enclosed structure, from an end view, made from a single sheet of material being folded over itself and connected at the opposite end.

Phrase and Construction: Cell Wall - The structure that defines an enclosed space, from an end view.

Reasoning: Again, the real dispute between the parties is whether the upper and lower cell walls must be constructed from the same single piece of fabric. And again, the language of the patents and the doctrine of prosecution disclaimer resolve the dispute.

The language of the '634 Patent indicates that the upper cell wall and the lower cell wall must be formed from a single sheet of material. Although the claims are not conclusive on this issue, the specification is. The specification of the '634 Patent only discloses the use of one sheet of material to form the upper and lower cell walls.

The prosecution history supports the same limitation. In his January 20, 1998 declaration, submitted to the Patent

21

Office with his application for the '634 Patent, Judkins described his invention as "[e]ach cell of this honeycomb would be made of strips of material folded lengthwise to form an upper cell wall and a lower cell wall." This clear and unmistakable statement, from the inventor himself, describes what the cell walls are and how they are formed.

In response, Judkins argues that it is improper to limit the claims to a preferred embodiment. That may be a true statement of patent law, as a general matter. However, it does not directly address the impact of the statements of limitation that Judkins made to the Patent Office during prosecution. Nor does it recognize the equally valid principle of patent law that an inventor cannot take one position in order to obtain claim allowance and a different position in order to obtain a judgment of infringement. That Judkins provides no substantive argument as to why his January 20, 1998 declaration does not resolve the claim construction dispute before us is telling.

In closing, we note that we have not considered the recent amendments Judkins made to the parent '282 Application. First, the '282 Application has not yet issued, and any findings made by the Patent Office as to the viability of that application are not final, nor public record. Second, although not ruling on the issue, it is not beyond the realm of possibility that

22

Judkins created those amendments as a litigation tactic for use in this case. More importantly, Judkins cannot avoid the fact that he has been making statements to the Patent Office for almost ten years regarding the scope and characteristics of his invention. He cannot now cast those statements aside, and replace them with carefully crafted, contradictory, post-litigation filings.

## IV. CONCLUSION

For the foregoing reasons, we have adopted the preceding as our claim construction in this matter.

BY THE COURT:

J.

cc: All Counsel of Record