IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REN JUDKINS,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              )  Civil Action No. 07-0251
                                      )
HT WINDOW FASHIONS CORP.,             )
                                      )
            Defendant.                )

MEMORANDUM and ORDER

Gary L. Lancaster,                                    May /8, 2009
District Judge

        This is a patent infringement case.  Plaintiff, Ren

Judkins, alleges that defendant, HT Window Fashions Corporation,

has infringed his double celled window blind patent.  HT denies

that it infringes this patent and contends that the patent is

invalid and unenforceable.  HT also seeks a declaratory judgment

of non-infringement, invalidity, and unenforceability as to

Judkins's single celled window blind patent.[1]  In addition, HT

has brought   numerous business tort counterclaims against

_____

        [1] HT filed both a declaratory judgment counterclaim in
this case, and a separate declaratory judgment action in
California, seeking rulings of invalidity, unenforceability, and
non-infringement as to the single celled patent (the '634
Patent).  The California case was transferred to this court and
consolidated with this matter.  For ease of reference, unless
relevant to the discussion, we will not make any distinction
between the procedural manner in which each patent is being
asserted or challenged in this case.

Judkins because he sent letters to HT's customers informing them that HT's blinds infringed his patents.

HT has filed a summary judgment motion seeking a ruling that both of Judkins's patents are invalid as a matter of law. [doc. no. 78]. Both parties have filed motions for summary judgment on the issue of infringement [doc. nos. 76, 80]. Finally, Judkins seeks entry of judgment as a matter of law on each of HT's business tort counterclaims [doc. no. 74]. Because there are disputed facts material to all of these issues, we deny each of the motions.

I.    BACKGROUND

We have summarized the general factual and technical background of this case in prior opinions [doc. nos. 28 and 55]. We summarize those facts that are most relevant to the pending motions below.

A.    The Technology and The Patents

This patent case is about window blinds. In particular, this patent case is about cellular window blinds, which from the side view look like stacked honeycombs. The two patents involved are United States Patent No. 7,182,120 (the '120 Patent) and United States Patent No. 7,159,634 (the '634

2

Patent). The claims of the '120 Patent cover double (or multi) celled honeycomb window shades. The claims of the '634 Patent cover single celled honeycomb window shades.

In our claim construction opinion [doc. no. 55] we detailed how Judkins distinguished his invention from the prior art on the ground that his honeycomb structures were formed by "fold[ing] one piece of material to make a pleat at one end and a tab at the other end by attaching the free ends of that same sheet of material to each other." [doc. no. 55 at p. 16]. Based on this, and other similar, clear and unmistakable statements made by Judkins to the Patent and Trademark Office (PTO) in order to obtain allowance, we found that this single sheet of fabric limitation was the only element of novelty in the two patents in suit. This finding is no longer open for debate in this court.

Both the '120 Patent and the '634 Patent stem from a common parent application: Patent Application No. 08/756,282 (the '282 Application or the parent application).[2] The '282 Application, in turn, is a continuation of Patent Application No. 08/412,875 (the '875 Application or the grandparent application). The '875 Application was filed on March 29, 1995.

---

[2] The '282 Application has been suspended pending resolution of this litigation.

The '282 Application was filed on November 25, 1996, but is entitled to claim priority to the March 29, 1995 filing date of the grandparent application because it was a continuation application.

The '120 Patent is a continuation of the '282 Application, meaning that the specifications of the two patents are identical. This also means that the '120 Patent is entitled to a presumptive priority date of March 29, 1995, the date on which Judkins filed the grandparent application.

The '634 Patent is a continuation-in-part of the '282 Application, meaning that Judkins added new matter to the parent application. Here, the new matter added was the disclosure of a headrail, a bottomrail, and lift cords [doc. no. 55 at p. 2]. Any claims disclosing only material previously found in the parent (or grandparent) application are entitled to a presumptive priority date of the filing date of the earlier application, while any claims containing new matter are accorded a priority date of the filing date of the continuation-in-part application. Augustine Med., Inc. v. Gaymar Indus., Inc., 181 F.3d 1291, 1302-03 (Fed. Cir. 1990). In this case, that means that claims 10 through 23 of the '634 Patent, which do not claim any new matter, have a presumptive priority date of March 29, 1995, while claims 1 through 9 and 24 through 46, which do claim

4

new matter, have a presumptive priority date of February 2, 1998.

Of course, these application dates are only presumptive, or default, priority dates. A patent owner always can, and often does, attempt to prove that his actual date of invention is earlier than the date on which he filed his patent application. This concept is discussed in more detail below in section II.B.2.b. The date of invention is of fundamental importance in determining whether asserted prior art references in fact qualify as prior art, making them capable of invalidating a patent.

The '282 Application was the subject of two interferences in the Patent and Trademark Office in the late 1990's and early 2000's: Interference No. 104,328 (against Ford '940) and Interference No. 104,329 (against Ford '550). The counts of both interferences covered only single celled window blind structures, as ultimately claimed in the '634 Patent, and did not include any double, or multi, celled structures, as ultimately claimed in the '120 Patent. This court heard the appeal from those interferences. <u>Judkins v. Newell Window Furnishings, Inc.</u>, Civ. No. 01-2211 (W.D. Pa. (Lancaster, J.)). However, we never issued a substantive opinion reviewing the rulings of the Board of Patent Appeals and Interferences (the

Board) because the parties settled the case while Judkins's motion for summary judgment was pending. Based on the fact that Newell did not oppose the motion for summary judgment, we disposed of that motion, and the case, by entering Judkins's proposed order.[3]

No date of invention was ever established for either patent in suit during these interferences. The Board eventually awarded Judkins priority over Ford as to the counts of the interferences on the basis that Ford no longer contested the issue and that, on appeal, this court reversed the Board's prior finding that Judkins suppressed or concealed his invention.

## B. Prior Art

HT claims that the '634 Patent is invalid on the ground that it is anticipated by the prior art. HT contends that both the '634 Patent and the '120 Patent are invalid because they are obvious in view of the prior art.

In support of these contentions, HT relies on the following pieces of alleged prior art:

---

[3] HT contends that Judkins and Newell reached a settlement of the matter before Judkins filed his motion for summary judgment. According to HT, the parties failed to inform the court of the settlement in a timely fashion in order to engineer the unopposed summary judgment motion so that Judkins could obtain a favorable order from this court.

6

- Ford Canada '280 [3/9/95 (filed); 9/11/95 (publicly available)]

- Ford D'856 [9/10/93 (filed); 11/29/94 (issued)]

- Ford '550 [3/10/94 (filed); 12/2/97 (issued)]

- Ford '940 [3/10/94 (filed as to old matter); 8/1/95 (filed as to new matter); 12/30/97 (issued)]

- Corey '601 [12/13/91 (filed); 3/16/93 (issued)]

- Judkins '656 [4/19/89 (filed); 12/4/90 (issued)]

According to HT, each of these references qualify as prior art to both parents in suit because neither the '120 Patent, nor the '634 Patent can claim a priority date before March 29, 1995.


II. LEGAL AUTHORITY

   A.   Summary Judgment Standards

        Summary judgment is appropriate in a patent case, as in all other cases, when it is apparent from the entire record, viewed in the light most favorable to the non-moving party, that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). One of the principal purposes of the summary judgment rule is to isolate and dispose

of factually unsupported claims or defenses. Id. at 323-24.
Therefore, summary judgment is mandated "against a party who
fails to make a sufficient showing to establish the existence of
an element essential to that party's case, and on which that
party will bear the burden of proof at trial." Id. at 322. The
summary judgment inquiry asks whether there is a need for trial
- "whether, in other words, there are any genuine factual issues
that properly can be resolved only by a finder of fact because
they may reasonably be resolved in favor of either party."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Hearsay statements can be considered on summary
judgment if they are "capable of admission at trial." Shelton
v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 223 n.2 (3d
Cir. 2000) (citing Stelwagon Mfg. Co. v. Tarmac Roofing Sys.,
Inc., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)).

B.    Substantive Law

      1.    Invalidity

            a.    General Standards and Burdens of Proof

Once issued "[a] patent shall be presumed valid ...
[and t]he burden of establishing invalidity of a patent or any
claim thereof shall rest on the party asserting such
invalidity." 35 U.S.C. § 282.  Because a patent issued by the

8

PTO is presumed valid, the evidentiary burden to show facts supporting a conclusion of invalidity is clear and convincing evidence. <u>WMS Gaming, Inc. v. Int'l Game Tech.</u>, 184 F.3d 1339, 1355 (Fed. Cir. 1999); <u>Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.</u>, 725 F.2d 1350, 1360 (Fed. Cir. 1984).

The clear and convincing evidence standard is an intermediate standard which lies somewhere between beyond a reasonable doubt and a preponderance of the evidence. <u>Buildex Inc. v. Kason Indus., Inc.</u>, 849 F.2d 1461, 1463 (Fed. Cir. 1988) (citing <u>Colorado v. New Mexico</u>, 467 U.S. 310, 316 (1984) (clear and convincing evidence exists when the movant places in the mind of "the ultimate fact finder an abiding conviction that the truth of its factual contentions are 'highly probable'")). This evidentiary standard is relevant in the context of a motion for summary judgment because "the judge must view the evidence presented through the prism of the substantive evidentiary burden. <u>Anderson</u>, 477 U.S. at 254.

Once a patent challenger has come forward with evidence establishing a <u>prima</u> <u>facie</u> case of invalidity, the patentee bears the burden of production to present sufficient rebuttal evidence appropriate to the specific invalidity challenge being mounted to prevent the party challenging the patent's validity from meeting its burden of proving invalidity

by clear and convincing evidence.  See Lisle Corp. v. A.J. Mfg.
Co., 398 F.3d 1306, 1316 (Fed. Cir. 2005); Mahurkar v. C.R. Bard,
Inc., 79 F.3d 1572, 1576-77 (Fed. Cir. 1996); Ralston Purina Co.
v. Far-Mar-Co. Inc., 772 F.2d 1570, 1573 (Fed. Cir. 1985).  The
burden of proof/persuasion never shifts to the patent holder.
T.P. Laboratories, Inc. v. Professional Positioners, Inc., 724
F.2d 965, 971 (Fed. Cir. 1984).

### b.  The Priority Date

Whether a reference qualifies as prior art to an
issued patent depends on the date of invention applicable to the
subject patent.  The date of invention, or priority date, is then
compared to the operative date of the reference, whether its
publication date, filing date, or some other date, to determine
whether the reference is prior art under any particular section
of the Patent Act.  35 U.S.C. §§ 102, 103; Riverwood Int'l Corp.
v. R.A. Jones & Co., 324 F.3d 1346, 1354 (Fed. Cir. 2003).  The
default priority date is the date that the inventor filed the
patent application, or the parent application, that resulted in
the issued patent.

However, an inventor is always entitled to prove a
priority date earlier than that presumptive date.  A patent
holder may establish an earlier date of invention by proving

"either an earlier reduction to practice, or an earlier conception followed by a diligent reduction to practice." Purdue Pharma L.P. v. Boehringer Ingelheim GMBH, 237 F.3d 1359, 1365 (Fed. Cir. 2001) (citing Price v. Symsek, 988 F.2d 1187, 1190 (Fed. Cir. 1993)). An invention consists of two parts: (1) the mental part of the invention, known as the conception, and (2) the physical part of the invention, known as the reduction to practice. Conception and reduction to practice are questions of law predicated on subsidiary factual findings. Id.

Conception is the formation in the mind of the inventor of "a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." Id. (quoting Burroughs Wellcome Co. v. Barr Laboratories, Inc., 40 F.3d 1223, 1228 (Fed. Cir. 1994)). Conception must include every feature or limitation of the claimed invention. Slip Track Sys., Inc. v. Metal-Lite, Inc., 304 F.3d 1256, 1263 (Fed. Cir. 2002) (citing Kridl v. McCormick, 105 F.3d 1446, 1449 (Fed. Cir. 1997)); see also, Coleman v. Dines, 754 F.2d 353, 359 (Fed. Cir. 1985) ("in establishing conception a party must show possession of every feature recited in the count, and that every limitation of the count must have been known to the inventor at the time of the alleged conception"). "Conception is complete only when the idea is so

11

clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." Burroughs, 40 F.3d at 1228.

Reduction to practice follows conception. See Mahurkar, 79 F.3d at 1578. Reduction to practice may be accomplished in two ways. One way is to make a physical embodiment that includes all of the limitations of the claimed invention. This is known as an actual reduction to practice. Medichem, S.A. v. Rolabo, S.L., 437 F.3d 1157, 1169 (Fed. Cir. 2006) (distinguishing between actual and constructive reduction to practice). The materials used in an actual reduction to practice need not be identical to the materials used in the actual invention unless the difference in materials would prevent the inventor from determining whether the invention would work for its intended purpose. Mahurkar, 79 F.3d at 1578. A second way is to file a patent application disclosing the invention. This is known as a constructive reduction to practice. Id.

### c. Anticipation

A patent cannot validly issue for an invention that is not new, but is instead anticipated by the prior art. Invalidity by anticipation requires that the four corners of a

12

single prior art reference describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation. Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citing cases). "[T]he dispositive question regarding anticipation [i]s whether one skilled in the art would reasonably understand or infer from the [prior art reference's] teaching" that every claim element was disclosed in that single reference. Schering Corp. v. Geneva Pharm., Inc., 339 F.3d 1373, 1377-1379 (Fed. Cir. 2003); see also In re Baxter Travenol Labs., 952 F.2d 388, 390 (Fed. Cir. 1991). "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." Scripps Clinic and Research Found. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir. 1991).

Anticipation is a question of fact. Atofina v. Great Lakes Chemical Corp., 441 F.3d 991, 995 (Fed. Cir. 2006); Minn. Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1301 (Fed. Cir. 2002). To make such a finding on summary judgment, the court must determine that no facts material to the question are disputed; or that even if all factual inferences are drawn in favor of the non-movant, there is no reasonable basis on which the non-movant can prevail. Cooper v. Ford Motor Co., 748 F.2d

13

677, 679 (Fed. Cir. 1984). The standard of proof that would have
to be met at trial must be considered, and the party bearing the
burden of proof at trial must present sufficient evidence on each
element in order to avoid summary judgment. Celotex, 477 U.S. at
322; Anderson, 477 U.S. at 257.

### d. Obviousness

A patent is invalid as being obvious in light of the
prior art when "the differences between the subject matter sought
to be patented and the prior art are such that the subject matter
as a whole would have been obvious as the time the invention was
made to a person having ordinary skill in the art to which said
subject matter pertains." Muniauction, Inc. v. Thomson Corp.,
532 F.3d 1318, 1325 (Fed. Cir. 2008) (citing KSR Int'l Co. v.
Teleflex Inc., 127 S.Ct. 1727, 1734 (2007)). Where the
improvement claimed to be the invention is nothing more than the
"predictable use of prior art elements according to their
established functions", the invention is obvious. Id.

Summary judgment is appropriately entered where "the
content of the prior art, the scope of the patent claims, and the
level of ordinary skill in the art are not in material dispute
and the obviousness of the claims is apparent in light of these
factors." KSR, 127 S.Ct. at 1745-46.

## 2. Infringement

Patent infringement analysis involves a two-step process: first, the claims are construed, as a matter of law, and second, the properly construed claims are compared to the allegedly infringing device to determine, as a matter of fact, whether all of the limitations of at least one claim are present in the accused device. Markman v. Westview Instruments, Inc., 517 U.S. 370, 374 (1996); Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1323 (Fed. Cir. 2002). Summary judgment is appropriate when there is no genuine issue of material fact as to whether the asserted claims read on the accused device, or where no reasonable jury could find that every limitation from an asserted claim is or is not found in the accused device. Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998); Lifescan, Inc. v. Home Diagnostics, Inc., 76 F.3d 358, 359 (Fed. Cir. 1996).

Even if an accused device does not infringe literally, it may still be found to infringe under the doctrine of equivalents. Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997). Infringement under the doctrine of equivalents occurs if the differences between the accused device and the claim limitation are "insubstantial," meaning that "the element performs substantially the same

15

function in substantially the same way to obtain substantially the same result as the claim limitation." <u>Zelinski v. Brunswick Corp.</u>, 185 F.3d 1311, 1316-17 (Fed. Cir. 1999) (citing <u>Graver Tank & Mfg. Co. v. Linde Air Products Co.</u>, 339 U.S. 605, 608 (1950)).

As with any other legal theory, where there is no genuine issue of material fact regarding infringement under the doctrine of equivalents, summary judgment is appropriate. However, the Court of Appeals for the Federal Circuit has recently reiterated, in the summary judgment context, that a patent holder must provide particularized testimony and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device on a limitation-by-limitation basis. <u>Network Commerce, Inc. v. Microsoft Corp.</u>, 422 F.3d 1353, 1363 (Fed. Cir. 2005) (citing cases). Generalized testimony as to the overall similarity between the claims and the accused device will not suffice. <u>Id</u>.

Moreover, the scope of a doctrine of equivalents infringement analysis may be affected by statements of limitation that the patent owner made during prosecution of the patent. As with the doctrine of prosecution disclaimer, upon which our claim construction was largely based, where a patent holder has made disavowing statements during prosecution that are both clear and

16

unmistakable, the doctrine of argument-based prosecution history estoppel applies to, and limits, any doctrine of equivalents analysis. <u>Cordis Corp. v. Medtronic Ave, Inc.</u>, 511 F.3d 1157, 1176-77 (Fed. Cir. 2008) (defining both doctrines).

### 3. <u>Business Torts</u>

A patent holder has the right to enforce his patent, including by threatening potential infringers with suit and notifying customers of the potential infringer of his patent rights. <u>Concrete Unlimited Inc. v. Cementcraft, Inc.</u>, 776 F.2d 1537, 1538 (Fed. Cir. 1985). Provided the statements are made in good faith, they are not actionable. <u>Fieldturf Int'l, Inc. v. Sprinturf, Inc.</u>, 433 F.3d 1366, 1372-73 (Fed. Cir. 2006); <u>Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.</u>, 393 F.3d 1378, 1381-82 & n.2 (Fed. Cir. 2005); <u>Mikohn Gaming Corp. v. Acres Gaming, Inc.</u>, 165 F.3d 891, 897 (Fed. Cir. 1998); <u>Mallinckrodt, Inc. v. Medipart, Inc.</u>, 976 F.2d 700, 709 (Fed. Cir. 1992).

Before a patentee may be held liable based on communications to the marketplace regarding potential infringement, there must be proof that the communication was undertaken in bad faith. <u>Zenith Electronics Corp. v. Exzec, Inc.</u>, 182 F.3d 1340, 1353 (Fed. Cir. 1999). This bad faith requirement is in addition to the elements that must be

established for any particular business tort. Id. Because there is a presumption that an assertion of infringement of a duly granted patent is made in good faith, a plaintiff must present affirmative, and clear and convincing, evidence that the patentee acted in bad faith. Springs Window Fashions LP v. Novo Indus., L.P., 323 F.3d 989, 999 (Fed. Cir. 2003); Golan v. Pingel Enter., Inc., 310 F.3d 1360, 1371 (Fed. Cir. 2002); C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1369 (Fed. Cir. 1998).

Exactly what constitutes bad faith is determined on a case by case basis. "In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." Mikohn, 165 F.3d at 897. Where a patentee knows that a patent is invalid, unenforceable, or not infringed, yet represents the contrary to the marketplace, bad faith can be inferred. Zenith, 182 F.3d at 1354. Where a patentee's position is objectively baseless, or where a patentee has no subjective reasonable belief in his position, bad faith can be inferred. Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1375, 1377 (Fed. Cir. 2004). A competitive purpose is not of itself improper. Mikohn, 165 F.3d at 897. Nor is bad faith established if the patentee's position is objectively reasonable, even if the

18

infringement or validity position is later proven to be wrong.
Id.

III. DISCUSSION

A.    Invalidity

HT asserts that the '634 Patent is anticipated and
obvious and that the '120 Patent is obvious.   Both of these
theories of invalidity depend on the priority date afforded to
each of the patents in suit.   The priority date affects the scope
of the prior art.   If, as Judkins contends, his priority date is
as early as 1990 it is possible that none of the cited references
would qualify as prior art.   If the evidence were to show that
the priority date for certain claimed inventions is 1990 or 1991
and for others is 1993 or 1994, then certain of the references
could be prior art as to one patent claim but not another, or
under one section of the Patent Act but not another.

Because there are genuine disputes of material fact
as to the fundamental issue of what priority date applies to the
claims of the patents in suit, the court cannot decide validity
as a matter of law. As such, HT's motion for summary judgment on
the issue of invalidity is denied.

HT's invalidity arguments are premised on the notion
that "[t]he earliest invention date of the '634 Patent is

February 2, 1998...because [the '634 Patent] claims new matter"
and that "[t]he earliest invention date of the '120 Patent
is...March 29, 1995." [doc. no. 79 at p. 4]. As an initial
matter, although recognizing elsewhere in its brief the principle
of law that any claims in a continuation-in-part application that
do not contain new matter are entitled to the parent
application's filing date [doc. no. 79 at pp. 7-8], HT fails to
apply that principle throughout its argument. Properly applied,
that principle indicates that claims 10 through 23 of the '634
Patent are entitled, at least, to the March 29, 1995 filing date
of the parent application.

However, this flaw in HT's argument is not what is
fatal to its motion for summary judgment. Instead, we are unable
to enter judgment as a matter of law on any of HT's invalidity
contentions because Judkins has come forth with evidence that his
actual date of invention is earlier than the default application
dates of either 1995 or 1998. In fact, HT recognized that
Judkins possessed such evidence at the beginning of this case by
referencing the same in its own counterclaims. See e.g., doc.
no. 7 at ¶¶ 36-40 (noting that the "T19 Process", which is
embodied in both the '120 Patent and the '634 Patent, was
allegedly conceived of "in 1990", and reflected in illustrations

in February 1991 and in the form of paper models in March of 1991).

Although Judkins's evidence is sufficient to meet his burden to overcome summary judgement, the court cannot make the ultimate determination as to the proper priority date to apply to the claims of either patent on this record. Instead, disputes of material fact dominate the invalidity case, such as corroboration of the date of conception, the proper relationship between double cell and single cell structures for purposes of determining conception, reduction to practice, and prior art, the adequacy of paper models versus fabric models, and Judkins's diligence between conception and reduction to practice. As such, we must deny HT's Motion for Summary Judgment of Invalidity on this basis. Without being able to determine the priority date applicable to each claim of each patent in suit we cannot go on to assess the legal arguments relevant to determining invalidity as a matter of law.

B.    Infringement

Both parties have filed motions for summary judgment on the issue of infringement. Because there is also a critical factual dispute affecting the infringement analysis, the court

cannot enter judgment as a matter of law. As such, we must deny
both motions for summary judgment on the infringement issue.

However, although we cannot decide infringement as a
matter of law, we can significantly narrow the infringement issue
for trial. The court's claim construction opinion clearly
defined the invention of the two patents in suit. Relying on
statements made by the inventor himself to the PTO in order to
secure allowance, the novelty of both the '120 Patent and the
'634 Patent was defined as folding back on itself a single sheet
of fabric to form a pleat on one face and a tab on the opposite
face by attaching the free ends of that same sheet of material to
each other. [doc. no. 55 at p. 15, 16]. This limitation resulted
necessarily in "all walls of the front cells [being] formed from
a single sheet of fabric" in a double celled structure. [Id. at
p. 12]. As to a single celled structure, we noted that "[t]he
specification of the '634 Patent only discloses the use of one
sheet of material to form the upper and lower cell walls." [Id.
at p. 21]. To be clear, we explained that "[i]f a different
sheet of fabric is inserted somewhere into the structure, then
the loose ends of the same fabric that formed the pleat at the
front will not also be used to form the tab on the back." [Id. at
p. 17].

22

Despite these statements defining the invention, the summary judgment papers reveal that the parties, undeterred, have created a dispute regarding what is a "single sheet of material or fabric." Although not expressed as such in the briefing, the dispute revolves around when the single sheet of material can be cut, yet still fall within the limitations of the claims. We can resolve this dispute by reference to our claim construction opinion.

In explaining why the "two strips of shade material" and "separate pieces of fabric" limitations found in dependant claims 4, 5, and 6 of the '120 Patent could be squared with the court's single sheet of material claim limitation, we stated that "these claim elements are directed to when the stack is cut in comparison to when it is bonded (cl. 4), and the precise method used to bond the pieces (cls. 5 and 6)." This explanation presupposes that the single sheet of material must be folded back on itself first, before either gluing and cutting, or cutting and gluing. The supposition is the result of Judkins's own description of his invention to the PTO as being limited to folding a single sheet of material back on itself to form a pleat on one face and a tab on the opposite face by attaching the free ends of the same material.

23

Judkins's position that infringement could be found in this case, whether literally, or under the doctrine of equivalents, as long as the separate pieces of material that are eventually glued back together to form the cells originated, at some point in the past, from the same bolt of fabric directly conflicts with the court's claim construction opinion and with his own prior statements to the PTO. Judkins did not define his invention as using a single roll of fabric to make a cellular honeycomb structure; he defined his invention as folding a single sheet of material back on itself to form a pleat on one face and a tab on the opposite face by attaching the free ends. Whether the folding is followed by a cut then a bond, or by a bond then a cut is not important to the infringement analysis. However, that the folding occurs first is vitally important to it. That is how Judkins himself defined his invention. The court held him to those statements at the claim construction stage, and intends to hold him to them at the infringement stage.

Although, properly framed, the infringement question is a narrow one in this case, the record nevertheless does not allow for the question to be answered on summary judgment. We cannot make a summary determination on the ultimate question of infringement on this record because there is a key factual dispute as to how HT's accused devices are created.

24

C.     <u>Business Torts</u>

        HT has asserted seven business tort counterclaims
against Judkins.  All are based on Judkins's distribution of a
letter, dated February 7, 2007, to HT's customers informing them
that HT's window blinds infringed his patents.  All allege that
Judkins acted improperly in informing the marketplace that HT was
infringing a patent he knew to be invalid, unenforceable, and/or
not infringed by HT's products.  In order to prevail on any of
the business tort claims, HT must prove that Judkins sent the
letters in bad faith.

        HT alleges that Judkins sent the letters in bad faith
because he knew that the patents were invalid and unenforceable
when he sent the letters.  According to HT, the patents were
invalid because they are obvious or anticipated and were
unenforceable due to inequitable conduct, fraud on the court,
prosecution estoppel, or patent misuse.  In addition to the
business tort counterclaims, HT has also asserted a stand alone
declaratory judgment counterclaim alleging that the patents in
suit are unenforceable due to inequitable conduct, fraud on the
courts, prosecution estoppel, and patent misuse.

        We  previously  considered  Judkins's  alleged
inequitable conduct and fraud on the court in the context of HT's
motion  for  a  preliminary  injunction  to  prohibit  further

25

distribution of the market notification letter. [doc. no. 28]. We denied the motion on the ground that HT had failed to make a sufficient showing, on the record available to the court at that time, that the patents were unenforceable on these grounds. We also noted that a preliminary injunction was not warranted in this case because any harms suffered by HT as a result of Judkins's distribution of the letter could be compensated with money damages.

In ruling on the preliminary injunction motion, we reviewed the facts that HT submitted surrounding the prosecution history of the patents in suit, the <u>Newell</u> litigation in Illinois, and the interferences. We concluded that the "status of the '120 Patent is open to reasonable debate at this point." [doc. no. 28 at p. 26]. The Court of Appeals for the Federal Circuit affirmed.

The parties dispute the extent to which this court's and the appellate court's earlier findings are binding at this stage in the litigation. However, we need not decide that issue now. Even if we were to find that the prior preliminary injunction findings, whether made by this court or the appellate court, were law of the case, there are new factors that would permit reconsideration of the same. <u>See</u> <u>ACLU v. Mukasey</u>, 534 F.3d 181, 187-89 (3d Cir. 2008). For example, we now have

evidence relating to when, and under what circumstances, the instant litigation was disclosed during prosecution of the '282 Application. In addition, the Court of Appeals for the Federal Circuit has recently recognized that even if a patentee acted technically proper during isolated interactions with the PTO, "repeated attempts to avoid playing fair and square with the patent system" can  support an inequitable conduct finding. Nilssen v. Osram Sylvania, Inc., 504 F.3d 1223, 1235 (Fed. Cir. 2007).

Regardless, our decision on the law of the case issue is not determinative of the motion before the court. HT could prevail on his business tort claims without proving that Judkins engaged in inequitable conduct. HT also contends that Judkins acted in bad faith because he sent the letters knowing that the patents were invalid as obvious or anticipated, or unenforceable for reasons other than those previously asserted in the motion for a preliminary injunction, i.e., inequitable conduct or fraud on the court.  The court did not consider these bad faith allegations previously in this case.  Thus, there is no possible proscription on our doing so now.

Although we can consider these allegations, and the evidence related thereto, we cannot decide the issue on summary judgment. A reasonable jury could find, based on the evidence of

27

record, and after making credibility findings at trial, that Judkins acted in bad faith. It could also conclude that Judkins acted in good faith. The court cannot make that determination, one way or the other, as a matter of law.

IV. CONCLUSION

For the foregoing reasons, each of the motions for summary judgement are denied. Factual disputes ranging from the priority date of the patents in suit, to details regarding the structure of the allegedly infringing blinds abound in this case. As such, this case must be submitted to a jury for determination.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REN JUDKINS,                        )
                                    )
            Plaintiff,              )
                                    )
     v.                             )   Civil Action No. 07-0251
                                    )
HT WINDOW FASHIONS CORP.,           )
                                    )
            Defendant.              )

ORDER

AND NOW, this 19th day of May, 2009, IT IS HEREBY
ORDERED that all outstanding motions for summary judgment [doc.
nos. 74, 76, 78, 80] are DENIED.

The court will notify counsel of the scheduling of a
telephonic status conference in order to address further pretrial
matters.

BY THE COURT,

_____, J.

29