IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REN JUDKINS,                          )
          Plaintiff,                  )
                                      )
     v.                               ) Civil Action No. 07-0251
                                      )
HT WINDOW FASHIONS CORP.,             )
          Defendant.                  )

MEMORANDUM

Gary L. Lancaster,                    March 30 , 2010
Chief Judge.

          This is an action in patent infringement.   On
November 12, 2009, a jury found that HT willfully infringed
one of Judkins's patents and awarded him $154,776.04 in
damages.  The jury also found that HT would infringe another
of Judkins's patents if it began selling a different product.
The jury rejected HT's contentions that both of Judkins's
patents were invalid and/or unenforceable.

          Before the court are various post-trial motions:

     (1) Judkins's Motion for a Permanent Injunction [doc.
          no.  220]  and  HT's  Motion  to  Strike  the
          Declarations that Judkins filed in support of that
          motion [doc. no. 234];

     (2) Judkins's Motion for Prejudgment Interest [doc. no.
          224];

     (3) Judkins's  Motion  for  Attorney  Fees  and  Enhanced
          Damages [doc. no. 226];

     (4) Judkins's Motion for Reconsideration of Decision

Under Rule 50 that Claims 1 and 24 of the '634 Patent are Invalid [doc. no. 227]; and

(5) HT's Motion for Judgment as a Matter of Law or for a New Trial [doc. no. 230].

## I.    FACTUAL BACKGROUND

The parties are familiar with the relevant facts. Previous opinions of this court contain detailed factual and technological summaries for readers in need of such background information [see doc. nos. 28, 50, 55, 109, and 117]. Simply put, Judkins is an individual inventor who owns many patents in the field of window blinds.    Two of his patents are at issue in this case.    Judkins accused HT of infringing the '120 Patent by selling its Polaris brand double-celled honeycomb blind.    Judkins also claimed that HT would infringe the '634 Patent if it began to sell its first generation Polaris brand single-celled honeycomb blind.

The jury found that HT's products infringed the '120 Patent and would infringe the '634 Patent.    The jury also found that HT's infringement of the '120 Patent was willful.    The jury rejected HT's contentions that both patents were invalid and unenforceable.    The jury awarded Judkins more than $154,000.00 in damages.

2

II.   POST-TRIAL MOTIONS

There are numerous post-trial motions pending.  The court will address each below.  However, to summarize, we find that a permanent injunction is warranted, but that the declarations filed in support of Judkins's motion should be stricken.  We award prejudgment interest, but at a lower rate than that requested by Judkins.  We deny Judkins's motions for attorney fees and enhanced damages and to reconsider the Rule 50 decision made during trial.

Finally, we find that there is insufficient evidence to support the jury's findings of infringement of both patents under the doctrine of equivalents, and of literal infringement of the '634 Patent.  Therefore, we enter judgment as a matter of law on those issues.  All other aspects of the jury's verdict are supported by sufficient evidence, are not against the great weight of the evidence, and do not result in a miscarriage of justice, and will remain undisturbed by the court.

A.   Judkins's Motion for a Permanent Injunction and HT's Motion to Strike the Supporting Declarations

Judkins seeks a permanent injunction enjoining HT's manufacture and sale of the Polaris double-celled product and the first generation Polaris single-celled product.  Judkins contends that he has been irreparably harmed by HT's willful

3

infringement of the '120 Patent and will continue to suffer such harm if HT is not enjoined.  HT argues that Judkins has not established that he is entitled to such relief under the appropriate legal standard.

We conclude that Judkins is entitled to permanent injunctive relief.  However, given the court's entry of judgment as a matter of law that the '634 Patent is not infringed, such relief shall apply only to the Polaris brand double-celled product.

### 1.  Motion to Strike Declarations

As an initial matter, we must resolve HT's motion to strike the declarations that Judkins attached to his motion for a permanent injunction.  HT claims that these declarations should be stricken because they introduce new evidence that was not disclosed during discovery, nor admitted into evidence at trial.  The declarations contain statements regarding the potential for harm to Mr. Judkins's reputation and licensing business in the absence of a permanent injunction.  They also refer to Mr. Judkins's alleged oral promises to refrain from licensing his patented technology to HT.

Judkins did not respond to HT's objection that the declarations contradict, or improperly supplement, the trial

record by adding reputational harms to the list of injuries suffered by Judkins as a result of HT's infringement. Instead, Judkins argues only that the declarations are proper because they do no more than explain and expand upon the terms of Judkins's licensing agreement with Nien Made. According to Judkins, because this agreement is complicated, with many amendments spanning a period of several years, further explanation is required.   While we agree that the terms of the Nien Made licensing agreement are critical to determining whether to enter a permanent injunction, we find nothing so complex about its structure or terms that testimony, by way of post-trial declarations, is needed in order to proceed.

The court will not consider newly disclosed testimony regarding how certain terms of the agreement were arrived at, or understood, by the parties.   To do so is both unnecessary, because the agreement speaks for itself, and unfair because Judkins had the opportunity to develop and disclose that evidence prior to trial, but failed to do so. It would be similarly unfair for the court to consider Judkins's newly disclosed evidence regarding the alleged harms to his reputation and business interests in deciding whether to grant a permanent injunction.

HT's motion to strike [doc. no. 234] is granted.

5

## 2.  Motion for a Permanent Injunction

Without considering Judkins's now stricken declarations, we must determine whether a permanent injunction is warranted in this case. We conclude that it is.

In a patent case a district court must determine, in accordance with traditional equitable considerations, whether permanent injunctive relief is appropriate based on the particular facts and circumstances of the case before it. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 390-94 (2006). In doing so, a district court must not categorically grant, nor categorically deny, injunctive relief simply because there has been a finding of patent infringement. Id. at 392-93. Rather, the court must apply the well-established four-factor test to requests for injunctive relief in patent cases, just as in all other types of cases. Id. at 391.

Under that test, in order to be awarded injunctive relief, Judkins must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between Judkins and HT, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. Id. Upon application of those factors

6

to the facts and circumstances of this case, we conclude that permanent injunctive relief is warranted in this case.

### a. <u>Irreparable Harm and Inadequate Remedy at Law</u>

Judkins alleges that he has suffered irreparable harm due to HT's infringement in two ways: (1) by effectively requiring a compulsory license on unfavorable terms; and (2) by harming his reputation and future licensing activities in the window coverings industry. Judkins claims that these harms cannot be adequately remedied with monetary damages.

According to HT, infringement of Judkins's right to exclude is not irreparable harm under controlling precedent and any allegations of harm to reputation are speculative and now unsupported because we have stricken Judkins's declarations. HT also contends that even if Judkins could establish those harms, Judkins can be made whole with monetary damages, making a permanent injunction unnecessary.

We find that Judkins has established irreparable injury in this case and that monetary damages are inadequate to compensate him for that injury. In doing so we do not conclude that irreparable harm must always follow a finding of willful patent infringement. Rather, we have considered the facts and circumstances of this case.

7

According to the plain terms of the Nien Made license agreement,[1] Judkins promised that he would not license the technology at issue to any other third party. Failure to enter a permanent injunction in this case would result in Judkins's unwilling violation of that promise, which would have an unavoidable and undeniable effect on Judkins's future licensing negotiations. If a licensee specifically negotiates for exclusivity and Judkins cannot deliver it, Judkins's bargaining power and standing in the industry will be diminished. This is not speculation. It is logic. The court finds that in this case, where Judkins specifically promised that he would not further license the

---

[1] HT, in a footnote to its opposition brief, objects to the relevancy of the Nien Made license agreement [doc. no. 232 at 8 n.2]. At trial, we admitted royalty rates from that license into evidence [PX 159]. In doing so, we sustained HT's objection that it was improper to admit into evidence many of the agreement's other financial terms, in particular a $1 million lump sum payment, because those terms were related to machinery only [doc. nos. 253 at 50-51, 254 at 18-21]. At trial, HT originally argued that the Nien Made agreement was not relevant because the patents in suit were not listed among the Licensed Patents when the agreement was originally signed in 2003. However, HT ultimately acquiesced to Judkins showing the jury the royalty structures from the original June 9, 2003 agreement and the August 26, 2005 amendment provided the remainder of the agreement was not entered into evidence; which is exactly how the court proceeded [Id.]. Given that the royalty structures from the original agreement and amendment were entered into evidence, in the manner requested by HT, we will not revisit the relevance of the Nien Made licensing agreement at this stage of the proceedings.

technology, failure to grant a permanent injunction will result in irreparable harm.

We also find that monetary damages would not fully compensate Judkins for this harm. Although one could describe Judkins's only commodity as patents and his only concern as being paid royalties for their use, that focus is too narrow. Judkins does more than collect royalty checks in arms length transactions with random licensees. Instead, Judkins is in the business of building long term relationships with leaders in the window blinds industry. The evidence at trial demonstrated that Mr. Judkins's licensing relationships span many years with the same companies. The evidence at trial was also that he took an ownership interest in one licensing partner in the past, and has obtained financing for patent applications and litigation costs from his licensees. Harm to those relationships, and the resulting loss of these, and other, tangential benefits, cannot be quantified and remedied completely with money. As such, Judkins cannot be fully compensated with monetary damages.

Therefore, the first two factors weigh in favor of entering a permanent injunction.

9

b.    Balance of Hardships

The balance of hardships favors an equitable remedy in this case.    As an initial matter, in assessing this balance, we must consider the proper scope of any potential injunction.  Given that we will enter judgment as a matter of law finding no infringement of the '634 Patent, a permanent injunction would only apply to HT's Polaris brand double-celled honeycomb blinds.

There is no evidence that such an injunction would have a serious effect on HT's business.  HT could continue to sell its remaining products.  It could also sell a different double-celled product by either purchasing cellular fabric from a Judkins licensee, or by using a completely different double-celled product that does not practice Judkins's invention.  This may result in higher costs to HT.  However, when compared to the harm to Judkins in the absence of a permanent  injunction, which we have detailed in the section immediately above and incorporate herein, the balance of harms tips in Judkins's favor.

As such, the third factor weighs in favor of entering a permanent injunction.

10

c.    Public Interest

The final factor also weighs in favor of granting permanent injunctive relief.  There has been no showing that the public will be severely impacted if HT is not permitted to sell double-celled honeycomb window blinds with a pleat on the front and a tab in the back.  Although these products are important to these two parties, as evidenced by their pursuit of this case, window blinds are not of serious importance to the public's health, welfare, or safety.  Furthermore, there are many alternative window coverings in the marketplace.

In comparison, were an injunction not issued, there would be harm to the public's interest in having patent rights enforced and protected in the courts.

Therefore, this final factor also weighs in favor of entering a permanent injunction.

d.    Summary

Upon consideration of each of the four factors as applied to the facts and circumstances of this case, we find that the equities weigh in favor of granting Judkins permanent injunctive relief against HT's continued infringement of the '120 Patent.

11

Judkins's motion for a permanent injunction [doc. no. 322] is granted.   The court will enter an appropriate order in conjunction with this memorandum.


    B.   Judkins's Motion for Prejudgment Interest

         The jury awarded Judkins damages of $154,776.04 for infringing sales of HT's Polaris brand double-celled honeycomb window blinds between 2007 and 2009.   Judkins has now filed a motion seeking prejudgment interest in the amount of $50,620.80, or roughly 33% of the damages award.   HT agrees that an award of prejudgment interest is warranted, but claims that the amount requested by Judkins is excessive.

         We conclude that although prejudgment interest is appropriate in this case, the amount proposed by Judkins is inappropriate because it would be punitive, rather than compensatory.   As such, we will award Judkins prejudgment interest using HT's proposed calculations, resulting in an award in the amount of $14,195.68.

         There is no dispute that we can, and should, award prejudgment interest in this case.   35 U.S.C. § 284; Allen Archery, Inc. v. Browning Mfg. Co., 898 F.2d 787, 791 (Fed. Cir. 1990).   Prejudgment interest is awarded "...to make the patent owner whole, since his damages consist not only of the value of the royalty payments but also of the foregone use of

12

the money between the time of infringement and the date of the judgment." <u>General Motors Corp. v. Devex Corp.</u>, 461, U.S. 648, 655-56 (1983). Prejudgment interest is awarded to compensate the patent owner, not to punish the infringer. <u>Underwater Devices, Inc. v. Morrison-Knudsen Co.</u>, 717 F.2d 1380, 1389 (Fed. Cir. 1983) (overruled on other grounds in <u>In re Seagate Technology, LLC</u>, 497 F.3d 1360 (Fed. Cir. 2007)). The district court is charged with setting the appropriate rate at which such interest should be awarded, and determining the appropriate method of compounding. <u>Allen Archery</u>, 898 F.2d at 791.

Judkins contends that interest on the $154,776.04 damages award should be calculated based on the 16.07% per year interest rate applied to late royalty payments under the Nien Made licensing agreement. Using this rate, and compounding the interest yearly, Judkins asks this court to award him $50,620.80 in prejudgment interest. Although Judkins refers generally to various alternative methods of computing prejudgment interest in his reply brief, he never sets forth an actual alternative computation or award.

HT contends that using a late payment interest rate as the basis for an award of prejudgment interest is, by definition, punitive. Instead, HT suggests that prejudgment interest should be based on the interest rate Judkins would

have paid had he borrowed money during the time of HT's infringement.   According to HT, this rate should be the prevailing prime rate, compounded yearly according to the mid-year convention.   Using this method, HT arrives at a prejudgment interest award of $14,195.68.

We find that HT's proposed prejudgment interest calculation most accurately reflects a full compensatory award to Judkins.   Judkins's proposal is admittedly based on a punitive interest rate, which, as we have set forth above, is an improper basis for the awarding of prejudgment interest.   Instead, awarding Judkins prejudgment interest at the rate Judkins would have paid to borrow money, as proposed by HT, compensates Judkins for what he lost as a result of HT's infringement, i.e., the use of the money the jury awarded to him as patent infringement damages.

As such, we award prejudgment interest on the $154,776.04 compensatory damages award at the prime rate, compounded yearly according to the mid-year convention. Thus, we grant Judkins's motion for prejudgment interest [doc. no. 224] and award him prejudgment interest in the amount of $14,195.68.

14

C.    Plaintiff's Motion for Attorney Fees
      and Enhanced Damages

Judkins has filed a motion seeking both enhanced damages, pursuant to 35 U.S.C. § 284, and attorney fees, pursuant to 35 U.S.C. § 285.   Judkins alleges that both remedies are warranted in this case because the jury found HT's infringement to be willful.   Although Judkins's motion collapses the two inquiries, enhanced damages and attorney fees are separate considerations.   We will address them individually below.   In summary, we conclude that neither enhanced damages, nor attorney fees are appropriate in this case.

      1.    Enhanced Damages

Section 284 of the Patent Act states that "...the court may increase the damages up to three times the amount found or assessed."   35 U.S.C. § 284.   Enhanced damages are discretionary.   Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996).   Although a finding of willful infringement authorizes the award of enhanced damages, it does not mandate it.   Group One, Ltd. v. Hallmark Cards, Inc., 407 F.3d 1297, 1308 (Fed. Cir. 2005) (citing Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 543 (Fed. Cir. 1990)); Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1461 (Fed. Cir. 1998). Instead, we must look to the totality of the circumstances of

the case, considering both aggravating and mitigating facts, before reaching a determination of whether, and to what extent, we should exercise our discretion and award enhanced damages. <u>Odetics, Inc. v. Storage Technology Corp.</u>, 185 F.3d 1259, 1274 (Fed. Cir. 1999); <u>Read Corp. v. Portec, Inc.</u>, 970 F.2d 816, 826 (Fed. Cir. 1992) ("[t]he paramount determination...is the egregiousness of the defendant's conduct based on all the facts and circumstances").

Judkins claims that the jury's compensatory damages award should be trebled to $464,328.12 for the following reasons: (1) HT made no investigation into Judkins's claims of potential patent infringement; (2) HT arranged for Blinds-To-Go to directly import infringing product from Taiwan while this case was pending; (3) HT pursued its state law claims even after the court denied its motion for a preliminary injunction; and (4) the jury found that HT willfully infringed. Judkins does not address the <u>Read</u> factors in his motion.

The Court of Appeals for the Federal Circuit has provided district courts with several factors to consider when determining whether damages should be enhanced. These are commonly referred to as the <u>Read</u> factors. The <u>Read</u> factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the

16

infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) closeness of the case; (6) duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.  i4i Ltd. Partnership v. Microsoft Corp., 589 F.3d 1246, 1273-74 (Fed. Cir. 2009); Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1225 (Fed. Cir. 2006); Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992) (superseded on other grounds as recognized in Hoechst Celanese Corp. v. BP Chemicals Ltd., 78 F.3d 1575, 1578 (Fed. Cir. 1996)).

        An evaluation of the above factors assists us in deciding whether to exercise our discretion and award enhanced damages.   Upon consideration of each of these factors, and the aggravating and mitigating circumstances unique to this case, we conclude that it is not appropriate to enhance the jury's damage award.

        Deliberate Copying - Judkins does not allege in his motion that HT engaged in deliberate copying.  In his reply brief Judkins alleges that copying can be inferred due to the

17

similarity of HT's products to Judkins's licensees' products
and the lack of evidence of independent creation.  We
disagree that such an inference must be made on either basis.
The fact remains that Judkins has failed to identify any
evidence that HT copied his inventions.

Therefore, this factor weighs against enhancing
damages.

Good Faith Belief in Invalidity and
Unenforceability - Judkins contends in his motion that HT
could have had no good faith belief in its defenses for the
sole reason that Mr. Miles admitted at trial that "HT made
no investigation" into the allegations made in Judkins's
January 28, 2007 letter.  Mr. Miles's oft-quoted alleged
admission that HT ignored Judkins's threat letter is belied
by the undisputed facts surrounding this case.

Mr. Miles's statement must be read in the context
of his entire testimony.  He told the jury that he was a
salesman.  There was no evidence that he was involved in the
technical aspects of patent infringement analysis, nor had
the skills and ability to participate in the same.  Instead,
Mr. Miles testified that he was advised that HT was
proceeding in accordance with third party patents and that
he conveyed that information to his customer base when asked.
That a salesman was not privy to detailed discussions engaged

18

in by patent attorneys in arriving at an ultimate legal conclusion does not alone prove that HT had no good faith belief in its defenses.

Rather, the evidence proves that HT did not ignore the Judkins patents.  Had it done so, HT could not have corresponded with Judkins in 2005 and 2006 regarding its single-celled product, nor filed a lawsuit in federal court in California within two weeks of receiving Judkins's January 28, 2007 letter regarding its double-celled product.

Judkins presents no other evidence, other than the Miles testimony, that this factor favors enhancing damages. Considering the background facts of this case and the context of that testimony, it does not, alone, indicate that HT had no good faith belief in its invalidity, unenforceability, or non-infringement positions.

Thus, this factor does not weigh in favor of enhancing damages in this case.

Litigation Behavior - In his motion, Judkins faults HT for pressing its state law claims even after the court denied its motion for a preliminary injunction based on them. As Judkins correctly notes, the court also disposed of those claims as a matter of law during trial.

In order to succeed on its state law claims, HT was required to prove that Judkins made the accusations of patent

19

infringement against it in bad faith; or that the accusations were objectively baseless, and if so, then also subjectively baseless.     Globetrotter Software v. Elan Computer Group, Inc., 362 F.3d 1367, 1375, 1377 (Fed. Cir. 2004); GP Industries, Inc. v. Eran Industries, Inc., 500 F.3d 1318, 1374-75, 1386 (Fed. Cir. 1998); Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340, 1353 (Fed. Cir. 1999).  The court was unable to dispose of any infringement, validity, or enforceability issues via summary judgment.  As such, it was not improper for HT to pursue its business tort claims at trial.  That the court ultimately was able to dispose of HT's claims as a matter of law, after evidence was admitted, and key witnesses testified, at trial, does not prove that HT acted improperly by pressing its claims.

          Moreover, before we award enhanced damages based on this factor, we must look to all the circumstances of this case.  Those circumstances include consideration of Judkins's litigation conduct as mitigating circumstances.    It  is inappropriate to punish HT for its litigation conduct when Judkins's conduct was itself egregious.     This conduct included Judkins's request to extend the discovery deadline three months after it had passed by way of motion for third party discovery, his refusal to accept and litigate according to the court's claim construction ruling, including in his

case in chief before the jury, his motion alleging that an industry recipient of the February 7, 2007 threat letter was an indispensable party, and his use of filings from this case in the patent prosecution process before notifying the patent examiner of this litigation, among other things.

Therefore, we will not punish HT with enhanced damages for pressing its business tort claims at trial, which survived summary judgment, when Judkins's conduct throughout this case was itself inappropriate and disruptive.

This factor weighs against enhancing damages.

Size and Financial Condition - Judkins made no allegations in his motion for enhanced damages regarding the size and financial condition of HT. In his reply brief, he notes that HT is being indemnified by Teh Yor, its vendor partner in Taiwan. However, Judkins fails to explain how that fact affects our analysis. The record does not contain any evidence regarding the effect that a nearly half million dollar verdict would have on Teh Yor, or HT for that matter.

As such, this factor does not weigh in favor of enhancing damages.

Closeness of the Case - Judkins made no allegations regarding this factor in his motion. In his reply brief, he claims that the jury's verdict, which was in Judkins's favor on all issues, and the Court of Appeals for the Federal

Circuit's statement that "HT faced slim odds of prevailing" support the conclusion that this was not a close case. We disagree.

As an initial matter, we must clarify the context of the court of appeals's quotation relied upon by Judkins. The appellate court was referring not to HT's potential ultimate success in defending the patent infringement case, or proving its business tort claims, but to HT's likelihood of prevailing on an appeal from the denial of a motion for a preliminary injunction, where the standard of review is clear error. The court of appeals did not indicate in its opinion, as Judkins suggests, that HT's business tort counterclaims, or patent defenses were weak.

Instead, substantial questions remained regarding infringement, validity, and enforceability, as well as HT's business tort counterclaims, as the parties went into trial of this matter. Despite extensive briefing, the court could not resolve any of these issues through summary judgment. The mere fact that Judkins won is not a sufficient basis for awarding enhanced damages, as Judkins contends. That the jury sided with Judkins cannot be used as a hindsight justification to find that this was not a close case. It was.

22

On balance, we find that this factor weighs against enhancing damages.

Duration of Infringement - Judkins made no allegations regarding this factor in his motion. In his reply brief he argues that this factor weighs in favor of enhancing damages because HT continues to sell its Polaris brand products to this day. Judkins sued HT the day the '120 Patent issued. Judkins did not seek a preliminary injunction to stop HT's infringement during the pendency of this case.

He did timely file a motion for a permanent injunction following entry of the jury's verdict. However, entry of a permanent injunction no longer automatically follows a finding of even willful patent infringement. eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 390-94 (2006). Therefore we cannot fault HT, and punish it with enhanced damages, for continuing to sell its product in the absence of a preliminary injunction and while the court considered Judkins's motion for a permanent injunction.

This factor weighs against enhancing damages.

Remedial Action - Judkins made no allegations regarding this factor in his motion. In his reply brief, he claims that this factor weighs in favor of enhancing damages because HT continued to sell the Polaris products during trial even though it had no good faith belief in its

23

defenses. We have already dispensed with Judkins's
contentions in our discussion of the good faith belief and
duration of infringement factors above.

This factor weighs against enhancing damages.

Motivation to Harm - Judkins made no allegations
regarding this factor in his motion. In his reply brief, he
claims that this factor weighs in favor of enhancing damages
because HT intended to drive up Judkins's litigation costs by
filing suit in California and appealing this court's denial
of a preliminary injunction. As we did in considering the
litigation behavior factor above, we must look to the
totality of the circumstances to determine whether HT should
be punished by the imposition of enhanced damages.

In this case, even if we were to take Judkins's
allegations against HT as true, we would also have to
consider as mitigating factors that Judkins attempted to
extend the discovery deadline three months after it had
passed, filed a seemingly unnecessary motion to join an
indispensable party, attempted to ignore the court's claim
construction through most of the post claim construction
proceedings, including trial, and used litigation documents
from this case in the patent prosecution process before
informing the examiner that this action was pending.

Therefore, when viewed in the totality of the case,

24

this factor weighs against enhancing damages.

Concealing Misconduct - Judkins asserted in his motion, and reasserts in his reply brief that HT's role in arranging sales directly from Teh Yor to Blinds-To-Go warrants enhanced damages. Although HT has offered evidence to show that Blinds-To-Go requested this arrangement, there is also evidence that the arrangement was not readily revealed to Judkins in discovery. As such, it can be interpreted as an attempt to conceal sales.

This factor weighs in favor of enhancing damages.

In conclusion, exercising our discretion, and considering the totality of the circumstances that have occurred both during trial and throughout the three years that we have presided over this case, we find that an award of enhanced damages is unwarranted. While we recognize that the jury found HT to have willfully infringed Judkins's patent, the Read factors weigh almost universally against awarding enhanced damages in this case.

As such, Judkins's motion for enhanced damages [doc. no. 226] is denied.

25

2.  Attorney Fees

Section 285 of the Patent Act states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. As the statute makes clear, before exercising its discretion to determine whether attorney fees should be awarded, a court must determine whether a case is exceptional. Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1370 (Fed. Cir. 1999). The party requesting attorney fees must prove exceptional circumstances by clear and convincing evidence. Digeo, Inc. v. Audible, Inc., 505 F.3d 1362, 1366-67 (Fed. Cir. 2007). Even if a court determines that a case is exceptional, it does not necessarily follow that attorney fees will be awarded. National Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1197 (Fed. Cir. 1996). The award of attorney fees is left to the discretion of the district court.

The criteria for declaring a case exceptional include willful infringement, bad faith, litigation misconduct, inequitable conduct, unprofessional behavior, or similar circumstances. Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GmbH, 408 F.3d 1374, 1378 (Fed. Cir. 2005); Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 182 F.3d 1356, 1359-60 (Fed. Cir. 1999). Judkins's only contention in support of an award of attorney fees is that

26

the "willfulness finding made by the jury makes this an exceptional case" [doc. no. 226 at 2]. Judkins has presented no other facts or circumstances warranting a finding that this case is exceptional.

Although a jury finding of willfulness is among the circumstances that can support an exceptional case finding, it does not necessitate a finding of an exceptional case. Electro Scientific Industries, Inc. v. General Scanning Inc., 247 F.3d 1341, 1353-54 (Fed. Cir. 2001). In this case, we find that the jury's willfulness finding, standing alone, is insufficient to satisfy Judkins's burden of establishing that this case is exceptional by clear and convincing evidence. Even though we find sufficient evidence in the record to support the jury's willfulness verdict, we do not find that the circumstances justifying the jury's finding are so egregious that they, alone, can satisfy Judkins's burden.

Even putting aside that it is Judkins who must satisfy this high burden, and reviewing the record independently, we find no instance of bad faith, litigation misconduct, unprofessional behavior, or similar circumstances on the part of HT that would warrant deeming this case to be exceptional.

Regardless, even were we to determine that the willfulness finding alone warrants deeming this case to be

exceptional, after considering all the facts and circumstances of this case, as discussed above, we would exercise our discretion and not award attorney fees in this case. Group One, 407 F.3d at 1308.

As such, Judkins's motion for attorney fees [doc. no. 226] is denied.

### D. Plaintiff's Motion for Reconsideration

During the trial of this matter, HT sought judgment as a matter of law that claims 1 and 24 of the '634 Patent were invalid as anticipated by the '180 Ford Canadian Patent Application. The '180 Ford Canadian Patent Application was published on September 11, 1995, and issued on December 2, 1997. The application for the '634 Patent, which was a continuation in part, or CIP, of an original parent application filed on March 29, 1995, was filed on February 2, 1998. We will address this motion even though we find below that there was insufficient evidence to support the jury's verdict of infringement of the '634 Patent.

Judkins opposed HT's Rule 50 motion at trial on the ground that all claims of the '634 Patent should be afforded the March 29, 1995 priority date of its parent application. Judkins argued during trial that even though the court had already ruled in its claim construction and summary judgment

opinions that the '634 Patent claimed new matter elements
consisting of head rails, bottom rails, and pull cords, these
same elements were inherent in the parent application.
Judkins now states in his motion for reconsideration that the
court's Rule 50 ruling was "based upon the [incorrect]
premise that to be entitled to a claim of priority the bottom
rail, head rail, and cords must be specifically disclosed in
the parent application" [doc. no. 228 at 3].

        Judkins has misstated the issue.  Our ruling on
HT's motion was not based on general rules regarding when the
disclosure in a parent application can support a claim made
in a continuation in part application.  Our ruling was
instead based explicitly on previous rulings we made in this
case.

        These prior rulings included that: (1) the '634
Patent was filed as a CIP because it added new matter of head
rails, bottom rails, and pull cords; (2) the parent
application does not include any teachings regarding how the
fabric would be attached to the window; and (3) the term
"shade for covering a window" has multiple meanings in the
window coverings industry, but has been given a particular
meaning in this family of patents [doc. no. 55 at 2, 8, 10
and doc. no. 109 at 4-5].  We found that it followed from
these prior rulings that claims 1 and 24 of the '634 Patent,

which claim the new matter elements, are afforded the later February 2, 1998 priority date.  It further followed from this February 2, 1998 priority date that the '180 Ford Canadian Patent Application, which was published on September 11, 1995, predated these claims.  There was no dispute that if the Ford application predated the '634 Patent, it anticipated claims 1 and 24.

Judkins has provided no basis for the court to depart from any of its prior rulings, nor any explanation for his reversal of position before this court.  Judkins has never explained why he now contends that the elements added to the CIP as new matter were actually inherent in the parent application.  In particular, Judkins has never responded to the court's direct inquiry as to why, if he had a good faith belief that these elements were inherent in the parent application, he would have filed a CIP application to add them [doc. no. 255 at 140].  Judkins's counsel's vague references to "U.S. PTO regulations" being "the reason that would be done" does nothing to explain Judkins's change in position [Id.].  Judkins has never cited any specific regulations to the court, nor explained how they control in this case.

In short, Judkins has provided this court with no basis for disturbing its ruling on HT's Rule 50 motion, or

30

any of the prior rulings on which it was based, other than
his disagreement with the result.  Disagreement is not a
proper basis on which to obtain reconsideration of a court's
ruling.

As such, Judkins's motion for reconsideration [doc.
no. 227] is denied.

### E.   HT's Motion for Judgment as a Matter of Law or for a New Trial

HT has renewed the motion for judgment as a matter
of law that it made at trial. Fed. R. Civ. P. 50(b). It has
now also, in the alternative, moved for a new trial under
Federal Rule of Civil Procedure 59.  HT challenges six
aspects of the jury's verdict, and/or this court's rulings:
(1) infringement, both literal and under the doctrine of
equivalents, of both asserted patents; (2) willfulness; (3)
invalidity (obviousness, anticipation, and best mode); (4)
inequitable  conduct;  (5)  damages;  and  (6)  internal
inconsistencies in the jury's verdict.

We find insufficient evidence to support the jury's
verdict that HT's first generation Polaris brand single-
celled product would literally infringe the '634 Patent.
Therefore, we enter judgment as a matter of law in HT's favor
on that issue. We also find insufficient evidence to support
the jury's finding of infringement under the doctrine of

31

equivalents of both patents, and enter judgment as a matter of law in favor of HT on that issue as well.  As a result, we have removed the internal inconsistencies from the jury's infringement verdict and need not address that aspect of HT's motion.  In all other respects we find sufficient evidence to support the jury's verdicts, that the verdicts are not against the great weight of the evidence, that no miscarriage of justice would result if the verdicts were to stand, and that no errors of law occurred.  As such, we deny the remainder of HT's motion for judgment as a matter of law and for a new trial.

### 1.   Applicable Legal Standards

#### (a)   Motion for Judgment as a Matter of Law

Whenever a motion for judgment as a matter of law under Rule 50(a)(1) is not granted at trial, the moving party may renew the motion after judgment has been entered.  Fed.R.Civ.P. 50(b).  A motion for judgment as a matter of law will be granted only if, "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could" have reached its verdict.  Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).  In determining whether the evidence is

sufficient to sustain the jury's verdict, the court must review the record as a whole, but cannot reweigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. Id. (citing Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 190 (3d Cir. 1992)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000).

### (b) Motion for a New Trial

A new trial may be granted even when judgment as a matter of law is inappropriate. Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3d Cir. 1988). However, a new trial should be granted only when the verdict is contrary to the great weight of the evidence, or when a miscarriage of justice would result if the verdict were to stand. Id. at 735-36; Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1076 (3d Cir. 1996). A new trial because the verdict is against the great weight of the evidence should be granted "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991).

2. Discussion

HT objects to six categories of the court's rulings and the jury's verdict. We will address each category separately and determine, for each, whether either judgment as a matter of law, or a new trial, is warranted.

(a) Infringement

i. Literal Infringement

HT alleges that the evidence at trial was insufficient to support the jury's finding of literal infringement of the '120 Patent and the '634 Patent. According to HT, Judkins failed to prove that the accused Polaris products utilize a "single sheet of material" as construed by the court. In fact, according to HT, "[Judkins] deliberately omitted any reference to the Court's 'single sheet' construction when providing testimony and evidence to the jury" [doc. no. 233 at 5].

We must address each of Judkins's patents separately as the evidence submitted and our conclusion on each is different. In short, we find sufficient evidence to support the jury's literal infringement finding as to the '120 Patent, but not as to the '634 Patent.

34

### (a)  The '120 Patent

HT is correct that Judkins avoided the single sheet of material limitation imposed by this court's claim construction during much of his presentation of evidence to the jury.  However, both Mr. Corey and Mr. Judkins did ultimately address the limitation as it related to the Polaris double-celled product [see e.g., doc. nos. 253 at 119-121; 255 at 66-76].  Their testimony was in accord with the court's finding that the single sheet of material could be cut after it was folded and before it was glued and still meet the limitations of the claims [doc. no. 109 at 24].

Of course, HT also submitted evidence that it was not using a single sheet of material, relying heavily on a figure from the Yu Patent.  That the jury chose to believe Judkins and not HT is not grounds for entry of judgment as a matter of law or a new trial.  We are not to reweigh the evidence or substitute our judgment for that of the jury's.

There is sufficient evidence for the jury to have reasonably concluded that HT's Polaris brand double-celled product uses a single sheet of material, and infringes Judkins's patents in all other respects.  As such, we will not enter judgment as a matter of law on the issue of literal infringement of the '120 Patent, nor order a new trial on the same.

35

### (b)   The '634 Patent

As with the double-celled product, Judkins avoided the single sheet of material limitation imposed by this court's claim construction of the '634 Patent in his case in chief.   Upon reviewing the record, and Judkins's brief in opposition to HT's motion, we conclude that unlike with respect to the '120 Patent, Judkins never presented the jury with any evidence that the upper and lower cell walls of the first generation Polaris brand single-celled product were formed from a single sheet of material.

By Judkins's own admission, the only evidence submitted to the jury regarding literal infringement of the '634 Patent was the testimony of his expert, Mr. Corey [doc. no. 248 at 8].   Mr. Corey's comparison of the claims of the '634 Patent to a photograph of HT's product wholly ignored the court's claim construction.   That claim construction required that the upper and lower cell walls of the single-celled product be formed from a single sheet of material being folded over itself and connected at the opposite end. Mr. Corey never uttered the words "single sheet" or "folded over" in his discussion of the upper and lower cell walls [doc. no. 253 at 112, lns. 4-16].

Judkins identifies no other evidence admitted at trial to prove that this claim limitation, as construed, was

36

found in the first generation Polaris brand single-celled product. The court has been unable to independently locate any such evidence. Notably, the testimony identified above in which Mr. Judkins and Mr. Corey ultimately recognize and address the court's single sheet of material claim construction addressed only the '120 Patent and HT's double-celled product [see e.g., doc. nos. 253 at 119-121; 255 at 66-76].

Even viewing the evidence in the light most favorable to Judkins, there is insufficient evidence from which a jury reasonably could have concluded that HT would literally infringe the asserted claims, as construed, of the '634 Patent. As such, we will enter judgment as a matter of law regarding literal infringement of the '634 Patent by the first generation Polaris brand single-celled honeycomb window blind.

## ii. Doctrine of Equivalents Infringement

HT next argues that Judkins's evidence of infringement of both the '120 and '634 Patents under the doctrine of equivalents is insufficient to support the jury's verdict. We agree, and enter judgment as a matter of law on this issue. As such, we have removed the internal inconsistency from the jury's infringement verdict, and need

37

not order a new trial on this basis. <u>Mycogen Plant Science, Inc. v. Monsanto Co.</u>, 243 F.3d 1316, 1325-26 (Fed. Cir. 2001) (noting that the law of the regional circuit applied to the issue of inconsistent verdicts because it is a procedural issue that is not unique to patent law; and applying Third Circuit law).

Even if an accused device does not infringe literally, it may still be found to infringe under the doctrine of equivalents. <u>Warner-Jenkinson Co. v. Hilton Davis Chemical Co.</u>, 520 U.S. 17 (1997). Judkins must prove infringement under the doctrine of equivalents on a limitation-by-limitation basis. <u>Hewlett-Packard Co. v. Mustek Systems, Inc.</u>, 340 F.3d 1314, 1322-23 (Fed. Cir. 2003); <u>see also</u> <u>Network Commerce, Inc. v. Microsoft Corp.</u>, 422 F.3d 1353, 1363 (Fed. Cir. 2005), <u>Texas Instruments Inc. v. Cypress Semiconductor Corp.</u>, 90 F.3d 1558, 1566-67 (Fed. Cir. 1996). "That evidence must have included 'particularized testimony and linking argument.'" <u>Hewlett-Packard</u>, 340 F.3d at 1323 (citing cases). Such proof is necessary to prevent the jury from determining infringement by simply comparing the claimed invention and the accused device as to overall similarity. <u>Malta v. Schulmerich Carillons, Inc.</u>, 952 F.2d 1320, 1327 (Fed. Cir. 1991).

Moreover, in this case, the jury was instructed that the doctrine of equivalents was limited by clear and unmistakable statements of surrender that Judkins made during prosecution of his patents [doc. no. 256 at 43-46]; see also Cordis Corp. v. Medtronic Ave, Inc., 511 F.3d 1157, 1177 (Fed. Cir. 2008) (citing cases).

Judkins's evidence on doctrine of equivalents infringement was insufficient to support a reasonable jury's verdict both because it was too generalized and because it did not account for the specific statements of surrender Judkins made during prosecution of his patents. As such, it is appropriate to grant HT's motion for judgment as a matter of law on the issue of infringement under the doctrine of equivalents as to both the '120 and '634 Patents.

Mr. Corey's testimony regarding doctrine of equivalents infringement was too generalized to satisfy the standards set forth by the Court of Appeals for the Federal Circuit. Hewlett-Packard, 340 F.3d at 1322-23; [doc. no. 253 at 101-102, 113-114]. For instance, when asked to explain the basis for his opinion that the '634 Patent was infringed under the doctrine of equivalents, Mr. Corey stated that "I've compared the product to the claims and I've looked at the product and see that it does the same thing. It does it the same way, produces the same thing. There are no

substantial differences that I can see between the product and the claims, so it seems equivalent to me." [doc. no. 253 at 113-114]. His testimony explaining the basis for his opinion regarding infringement under the doctrine of equivalents of the '120 Patent is similarly vague and general; "So if I see no substantial difference and if I see that the product does the same thing and in the same way and produces the same result, then I would say that's an equivalent product. And my understanding of the doctrine of equivalence [sic] is that that product would still infringe under those conditions." [doc. no. 253 at 101-102].

Not only did Mr. Corey's testimony fail to prove infringement under the doctrine of equivalents on a limitation-by-limitation basis or include particularized testimony and linking argument, it also wholly ignored the court's ruling that the doctrine of equivalents was limited in this case by statements made by Judkins during prosecution of his patents. Under that ruling, a piece of material that was not a single sheet of material could not be found to be the equivalent of a single sheet of material in this case. Mr. Corey never acknowledged this limitation in his testimony.

40

The same shortcomings are found in Mr. Judkins's testimony on this issue[2] [doc. no. 253 at 48-49].

As such, the jury had absolutely no proper evidence on which to base its finding that HT infringed the '120 and '634 Patents under the doctrine of equivalents. Therefore, we must grant HT's motion for judgment as a matter of law on this issue.

### (b) Willfulness

HT alleges that Judkins failed to prove, by clear and convincing evidence, that HT willfully infringed the '120 Patent. According to HT, Judkins cannot prove that HT willfully infringed because: (1) Judkins failed to seek a preliminary injunction; (2) HT began producing the accused products before the '120 Patent issued; (3) HT relied upon its supplier's assurances that it was practicing the Yu patents; (4) HT had a good faith belief in its defenses; and (5) HT did not arrange for Blinds-To-Go to purchase directly from Teh Yor in order to avoid liability in this case [doc. no. 233 at 24-26].

---

[2]     Mr. Judkins's testimony on November 10, 2009, to which Judkins cites in support of the jury's doctrine of equivalents infringement verdict, was actually directed to literal infringement. As such, that testimony cannot support the jury's verdict on infringement under the doctrine of equivalents.

41

According to Judkins, many of these factors are not relevant to a jury's deliberations on the issue of willfulness. Judkins further contends that HT's failure to investigate Judkins's accusations of patent infringement and its involvement in arranging direct sales to Blinds-To-Go while this case was pending are alone sufficient to support the jury's verdict.

In order to establish willful infringement, "...a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.... If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk... was either known or so obvious that it should have been known to the accused infringer." In re Seagate Technology, LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).

We find the jury's verdict to be supported by sufficient evidence and made in accordance with the appropriate legal standards. Each of the points raised by HT could be relevant to a jury's deliberations and its ultimate determination on the issue of willfulness. However, it was the jury's province to believe, or disbelieve, HT's explanations and interpretations of the evidence, and to assign them such weight as it deemed appropriate. Viewing

the evidence in the light most favorable to Judkins and giving him the advantage of every fair and reasonable inference, we conclude that there was sufficient evidence from which a jury could reasonably have concluded that HT willfully infringed the '120 Patent.

In summary, we cannot say that there was insufficient evidence to support the jury's willfulness verdict, or that it was contrary to the great weight of the evidence or resulted in a miscarriage of justice. Therefore, we deny HT's motion for judgment as a matter of law, and for a new trial on the issue of willfulness.

### (c) Invalidity

HT contends that it is entitled to judgment as a matter of law, or a new trial, on its defenses and counterclaims of patent invalidity. According to HT all of the asserted claims of both the '120 Patent and the '634 Patent are obvious over the combination of Corey '601 and Judkins '656. HT also contends that the Ford Patents should have been deemed prior art, and as such, would have rendered the '120 Patent obvious and anticipated. HT also argues that the '120 Patent is invalid because it failed to disclose the best mode of practicing the invention. HT had the burden to prove invalidity on any of these grounds by clear and

43

convincing evidence.   <u>Eli Lilly & Co. v. Barr Labs.</u>, 251 F.3d 955, 962 (Fed. Cir. 2001).

The court concludes that the jury's verdict on invalidity was proper in all respects.   Therefore, we will not grant judgment as a matter of law or order a new trial on any of these validity issues.

### i.    The Ford Patents

Foundational to several of HT's challenges to the jury's invalidity verdicts is its contention that the Ford Patents should have been deemed prior art to the Judkins Patents.   The Ford patents (U.S. Patent No. 5,692,550, U.S. Patent No. 5,701,940 and U.S. Design Patent No. 352,856) claim priority to an application filed on March 10, 1994. The '120 Patent and the claims of the '634 Patent not including new matter have a priority date of March 29, 1995. As such, it would appear that the Ford Patents are prior art.

However, Judkins produced evidence that he invented this technology as early as 1990, thus beating Ford's 1994 priority date, and that Ford derived (or stole) the idea from him.    In turn, HT produced evidence that Judkins had abandoned, suppressed, or concealed his invention, thus losing his 1990 invention date, and argued that Judkins had no corroboration for his derivation theory.

We know that the jury sided with Judkins on these issues because had it found the Ford Patents to be prior art, then it would necessarily have followed that the '624 Patent was invalid as anticipated because claim 10 of the Ford '550 Patent is identical to claim 10 of the '634 patent. We see no error in the jury's conclusion.  Although it may have been a close case on each of these issues, as reflected by the fact that the court could not dispose of any of them on summary judgment, viewing the evidence in the light most favorable to Judkins and giving Judkins the benefit of all reasonable inferences, the jury's verdict is supported by sufficient evidence, and is not so contrary to the weight of the evidence or so shocking that the court must enter judgment as a matter of law or order a new trial.

### ii.  Obviousness

Obviousness must be proven by clear and convincing evidence. Procter & Gamble Co. v. Teva Pharmaceuticals USA, Inc., 566 F.3d 989, 994 (Fed. Cir. 2009).   The ultimate judgment of obviousness is a legal question, although it is based on factual determinations.   Graham v. John Deere Co., 383 U.S. 1, 17 (1966).  We submitted the ultimate question of obviousness to the jury.   The jury found that neither the '120 Patent, nor the '634 Patent were obvious.   We have

reviewed the evidence, and considered the appropriate standards to apply to an obviousness determination, and find no error, or miscarriage of justice, in the jury's verdict.

A ruling on an obviousness defense or counterclaim is made after considering: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art.  Graham, 383 U.S. at 17-18.  Evidence of secondary considerations may be used to shed light on the question of obviousness. Id.  Until recently, when an invention was allegedly made obvious by the combination of two, or more, pieces of prior art, a court, or jury, was next required to apply the "teaching, suggestion, or motivation" test. Under that test, a patent claim could be found obvious only if there was some motivation or suggestion to combine the pieces of prior art in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art.  KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 407 (2007).

In KSR the Supreme Court unanimously found that the teaching, suggestion, or motivation test was "incompatible with our precedents" when applied as a rigid and mandatory formula. Id. at 419. However, recognizing that most modern inventions "rely upon building blocks long since uncovered,"

the Court still found it "important to identify a reason that would have prompted a person of ordinary skill in the relevant art to combine the elements in the way the claimed new invention does." Id. at 418-19 Generally in determining obviousness, the Court directed us to ask whether the invention was a result of innovation, or of ordinary skill and common sense, because "the results of ordinary innovation are not the subject of exclusive rights under the patent laws." Id. at 406-07, 427.

With those directives in mind, we turn to the jury's verdict and our ultimate determination on the legal issue of obviousness in this case. We have reexamined the record and find no basis on which to depart from the jury's verdict.

### (a.) Combination of Corey '601 and Judkins '656

HT contends that the combination of Corey '601 and Judkins '656 renders all claims of both the '120 Patent and the '634 Patent obvious. According to HT, it was obvious to try combining pleats and tabs to resolve a known problem in the art. According to Judkins, the solution was not obvious. This was a close issue; one which the court was unable to resolve on summary judgment.

Both HT and Judkins provided evidence in support of their positions. Notably, Mr. Corey, the inventor of the Corey '601 Patent, told the jury that combining pleats and tabs was not obvious at the time, and that, in fact, it would have been considered a bad idea. The jury again sided with Judkins, and not HT. However, the jury's decision was supported by sufficient evidence, was not against the great weight of the evidence, and results in no miscarriage of justice. And as such, there is no basis on which to enter judgment as a matter of law, or order a new trial on this issue. Nor does the court have any reason to reach a conclusion on this issue that is different than the jury's verdict.

### (b.) Combination of Corey '601 and Ford Patents

HT contends that the combination of Corey '601 with either Ford '550 or Ford '940 renders the asserted claims of the '120 Patent obvious. According to HT, Judkins's patents do nothing more than add an additional glue line to the inventions disclosed in these Ford patents.

Of course, the foundation of this argument is that the Ford Patents are prior art to the '120 Patent. Because we have declined to disturb the jury's implicit finding that they were not, this objection becomes moot.

48

Given all of these considerations, we see no insufficiency, error, or injustice, in the jury's finding that HT failed to prove by clear and convincing evidence that the asserted claims of the patents in suit were obvious. We will neither enter judgment as a matter of law, nor hold a new trial, on the issue of obviousness. Nor do we find any reason to reach a conclusion on this issue that is different than the jury's verdict.

### iii. Best Mode

Finally, we find no merit in HT's contention that the '120 Patent is invalid because Judkins knew of, but concealed, a better way of carrying out the invention than that set forth in the specification. Teleflex, Inc. v. Ficosa N. Amer. Corp., 299 F.3d 1313, 1330-31 (Fed. Cir. 2002). Compliance with the best mode requirement is a question of fact which involves a two-pronged inquiry. N. Telecom Ltd. v. Samsung Electronics Co., 215 F.3d 1281, 1286, (Fed. Cir. 2000). The first prong is subjective, focusing on the inventor's state of mind at the time he filed the patent application, and asks whether the inventor considered a particular mode of practicing the invention to be superior to all other modes at the time of filing. Id. The second prong is objective and asks whether the inventor adequately

49

disclosed the mode he considered to be superior. See Amgen, Inc. v. Chugai Pharm. Co., 927 F.2d 1200, 1212 (Fed. Cir. 1991).

HT asserted that Judkins violated this best mode requirement by failing to disclose the use of a cross-linking urethane adhesive. According to HT, the adhesive was not known to one of ordinary skill in the art, but was important to practicing the invention, and therefore, should have been disclosed.

Judkins, on the other hand, claimed that the fact that such an adhesive was used in a prototype and disclosed in a later patent failed to establish that when he filed the instant patent application he concealed the best way to bind the sheets. Although not determinative, we note that the inventor himself testified on this exact point at trial and denied having concealed a better way to make the invention.

Again it was within the jury's province to decide who to believe. It obviously, again, sided with Judkins. We can assign no error or insufficiency in its decision to do so, and find no need to disturb the jury's verdict on this issue.

(d) Inequitable Conduct

Inequitable conduct is an equitable issue committed to the discretion of the district court. Flex-Rest, LLC v. Steelcase, Inc., 455 F.3d 1351, 1357 (Fed. Cir. 2006). The jury returned a verdict that the '120 Patent and the '634 Patent were not unenforceable due to inequitable conduct. We have reexamined the record and find no basis on which to depart from the jury's verdict.

HT asserted at trial that the '120 Patent and the '634 Patent were unenforceable because Judkins engaged in misconduct before the PTO and this court. According to HT, Judkins failed to timely disclose documents to the PTO and this court, and entered into a improper settlement agreement in prior federal court litigation before this judge. This has been HT's theory of the case since it filed suit in California. But that HT earnestly and consistently advanced this theory does not mean that a jury, or this court, must agree with it.

Sufficient evidence was submitted to the jury (and is collected in Judkins's opposition brief [doc. no. 248 at 17-19]) demonstrating that Judkins did disclose the documents in question, and did not enter into the settlement agreement improperly. Judkins produced evidence from his attorney, as well as Mr. Judkins himself, disavowing any deceptive intent

[doc. no. 251 at 162].

The jury accepted Judkins's explanations, and disbelieved HT's (or found them to fall short of satisfying HT's high burden of proof). We, exercising our equitable powers to ultimately decide this issue, cannot find that the evidence requires us to disagree with the jury. We agree that HT failed to prove, by clear and convincing evidence, that Judkins engaged in inequitable conduct. <u>Fox Industries, Inc. v. Structural Preservation Systems, Inc.</u>, 922 F.2d 801, 803 (Fed. Cir. 1990); <u>FMC Corp. v. Manitowic Co., Inc.</u>, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

(e) <u>Damages</u>

HT challenges the jury's damages award on the ground that it is excessive when compared to the royalty rates admitted into evidence at trial. According to HT's calculations, the jury's damages award amounts to an 8.75% royalty rate on infringing sales, whereas the evidence at trial provided for, at most, a 3% royalty rate. Judkins argues that the award is not excessive and is based on evidence of record.

While the court recognizes that the award exceed any royalty that would be due under the agreements admitted at trial, we do not find it to exceed the bounds of

reasonableness, or to have no basis in fact. The evidence at trial showed that Judkins's licensing agreements often included an up front fee, followed by a percentage based on sales. The jury was free to account for these lump sum payments and for the fact that they and the percentages increased over the years. The award is not so devoid of evidentiary support or so excessive that the court is compelled to strike it and substitute its own damages award.

In doing so, we take note of HT's complaint that the jury's initial verdict did not include a numerical value. However, we do not deem the jury's failure to initially determine an amount of damages to require intervention by the court. Upon being recharged, the jury returned a verdict with an amount of damages, and as discussed above, we do not find it so excessive that it indicates jury confusion.

We also take note of HT's argument that the damages award was tainted by the jury's incorrect assumption that a product could infringe a patent both literally and under the doctrine of equivalents. In short, HT argues that the jury erroneously doubled its damages award, awarding approximately $77,000 for literal infringement of the '120 Patent and approximately $77,000 for doctrine of equivalents infringement of the '120 Patent. The court cannot speculate as to the jury's reasoning for its damages award. There is

53

no indication on the verdict slip that the jury intended to split its award in this way. Nor is there any other basis on which the court could find that the jury engaged in such double counting. Having deemed the award to be reasonable and in accord with the evidence, the court will not disturb it on this basis.

### (f)   Summary

HT has objected to this court's rulings, and the jury's verdict, on the issues of infringement, willfulness, invalidity, unenforceability, and damages.[3] The court has entered judgment as a matter of law as to literal infringement of the '634 Patent and as to infringement under the doctrine of equivalents of both patents. The jury's verdict on each of the remaining issues was supported by sufficient evidence and does not result in a miscarriage of justice. Therefore, there is no basis for the court to enter judgment as a matter of law, or to order a new trial on those remaining issues. Where the jury decided legal or discretionary issues, we have reexamined the record and find no basis on which to depart from the jury's verdict.

---

[3]     As noted above, any internal inconsistencies in the jury's verdicts on infringement have been removed by virtue of this court's entry of judgment as a matter of law in HT's favor on the issue of doctrine of equivalents infringement.

III. CONCLUSION

The court has resolved all pending post-trial motions. An appropriate order, including an order for a permanent injunction, follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

REN JUDKINS,                       )
          Plaintiff,               )
                                   )
     v.                            )   Civil Action No.  07-0251
                                   )
HT WINDOW FASHIONS CORP.,          )
          Defendant.               )

## ORDER

AND NOW, this 30 day of March, 2010, IT IS HEREBY ORDERED as follows:

Judkins's Motion for a Permanent Injunction [doc. no. 220] is GRANTED.  An order for permanent injunction is filed in conjunction with this order;

HT's Motion to Strike Declarations [doc. no. 234] is GRANTED;

Judkins's Motion for Prejudgment Interest [doc. no. 224] is GRANTED.  Judkins shall be awarded prejudgment interest in the amount of $14,195.68;

Judkins's Motion for Attorney Fees and Enhanced Damages [doc. no. 226] is DENIED;

Judkins's Motion for Reconsideration of Decision Under Rule 50 that Claims 1 and 24 of the '634 Patent are Invalid [doc. no. 227] is DENIED; and

HT's Motion for Judgment as a Matter of Law or for a New Trial [doc. no. 230] is GRANTED, in part.  Judgment as a matter of law is entered that HT's Polaris brand double-celled honeycomb window blind does not infringe the '120

Patent under the doctrine of equivalents.  Judgement as a matter of law is also entered that HT's first generation Polaris brand single-celled honeycomb window blind does not infringe the '634 Patent, either literally or under the doctrine of equivalents.

BY THE COURT,

_____ C.J.

cc: All Counsel of Record